THE NATIONAL CITY BANK OF NEW YORK, demandante y apelado, *v.* MERCEDES DE LA TORRE, FRANCISCO DE LA TORRE y ARTURO O'NEILL, demandados y apelante el segundo.

Núm. 7608.—*Sometido:* Noviembre 10, 1938. *Resuelto:* Febrero 8, 1939.

*Francisco de la Torre, pro se* y *Luis Lloréns Torres,* abogado del apelante; *Fiddler, Córdova & McConnell,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Mercedes de la Torre Berríos solicitó un préstamo de The American Colonial Bank of Puerto Rico por la cantidad de $10,398.38. Para asegurarlo exigió el banco ciertas garantías colaterales en adición a la hipotecaria que le ofrecía la solicitante. En sustitución de las garantías colaterales convino el peticionario Francisco de la Torre Garrido obligarse también a pagar la cantidad prestada, con los intereses estipulados más las costas y honorarios de abogado en caso de reclamación judicial, prestando este servicio el Sr. de la Torre sin compensación alguna y sin que hubiera mediado a su favor ninguna valuable consideración o promesa de bene-

---

* NOTA: Véase el prefacio.

ficio. Llevando a cabo lo convenido, el 20 de mayo de 1929 suscribieron un pagaré Mercedes y Francisco de la Torre y se otorgó una escritura de préstamo con hipoteca sobre bienes de la primera, que también suscribió como otorgante el segundo, a los fines previamente indicados. Recibió doña Mercedes de la Torre la totalidad del préstamo y en el mismo acto o inmediatamente después lo entregó al Banco prestamista en pago de ciertas obligaciones suyas a favor del Banco ya vencidas.

No hace al caso puntualizar si Francisco de la Torre firmó el pagaré y la escritura en carácter de fiador solidario o deudor principal. Bastará decir, a los efectos de esta opinión, que el préstamo no se hizo en su particular beneficio ni en el de la sociedad conyugal que desde 1906 tiene constituída con su esposa, debiendo agregarse además que esta última no tuvo conocimiento ni ratificó en momento alguno la transacción celebrada por su esposo. Pero sí es un hecho aceptado por el Sr. de la Torre que él asumió la obligación de pagar la deuda en cuestión.

Algún tiempo después de celebrada esta transacción, The National City Bank of New York se hizo cargo de todo el activo y pasivo de The American Colonial Bank of Puerto Rico y fué así como el crédito de referencia pasó a poder del Banco demandante.

Vencido el préstamo y no satisfecho, el demandante instituyó la correspondiente acción para cobrarlo, y en aseguramiento de la sentencia que pudiera obtener, prescindiendo de los bienes hipotecados, solicitó y obtuvo la traba de embargo sobre bienes pertenecientes a la sociedad conyugal del Sr. de la Torre y de su esposa Doña Carmen Fernández Saldaña, no obstante alegarse por este demandado que él posee bienes privativos susceptibles de ser embargados para ese objeto.

No conforme con esta última actuación del demandante, el Sr. de la Torre, en pieza separada y como incidente del embargo, radicó un escrito en la Corte de Distrito de San

Juan en el que después de relatar los hechos anteriormente expuestos, no controvertidos por el demandante, solicitó que en definitiva y luego de oídas las partes, se decrete la nulidad y se ordene el levantamiento del embargo.

Basa su petición en que no tratándose de una carga o deuda de la sociedad conyugal, no pueden embargarse ni aplicarse al pago de la misma los bienes de dicha sociedad.

Oídas las partes, la corte de distrito dictó resolución desestimando la moción del Sr. de la Torre, estableciéndose contra dicha resolución el presente recurso.

Cinco son los errores imputados a la corte inferior, a saber:

"*Primero:* La Corte cometió error en su apelada sentencia o resolución de 14 de julio del 1937, por errónea interpretación del artículo 1308 de nuestro Código Civil (edición de 1930), así como de la jurisprudencia española interpretadora de dicho precepto legal.

"*Segundo:* La Corte apelada erró, en su dicha sentencia o resolución, por indebida y errónea interpretación de la prueba practicada; y por no haber hecho en su sentencia ninguna relación de los hechos probados, y por deducir de la prueba, erróneamente, que este apelante, en la obligación contraída, a que se refiere este incidente, se obligó a título *oneroso* y no a título *gratuito,* no obstante que la parte contraria aceptó que la obligación fué a título *gratuito.*

"*Tercero:* La Corte apelada erró, en su citada sentencia o resolución, al resolver que en este caso el Banco acreedor pudo embargar bienes gananciales, no obstante que la obligación fué contraída a título *gratuito* por el apelante.

"*Cuarto:* La Corte erró, en su dicha sentencia o resolución, en cuanto a los hechos probados y aceptados por la parte opositora, al separarse de lo consignado en el Acta del Juicio Verbal, la que fué aprobada por el mismo Juez, y al separarse también de los hechos probados y aceptados por la parte opositora, según aparece de la Exposición del Caso, la que también fué aprobada por el mismo Juez de la Corte.

"*Quinto:* Y la Corte erró, finalmente, en su apelada sentencia o resolución, al resolver que los bienes gananciales sólo no pueden embargarse cuando el marido actúa como fiador en el préstamo, pero que pueden embargarse cuando actúa como 'Accomodating Party', aunque no haya obenido ningún beneficio o utilidad en el préstamo."

A continuación del señalamiento de errores, admite el apelante (alegato, pág. 4) que aunque expuestos separadamente constituyen en realidad un solo error fundamental sintetizado en el primero de los señalados, a la discusión del cual dedica las primeras cuarenta y cuatro de las cincuenta y cinco páginas de que consta su alegato. Convenimos con el apelante en que el primero de los errores señalados entraña la verdadera cuestión en controversia, y creemos además que de no existir dicho error es innecesario considerar los cuatro siguientes, porque procedería entonces la confirmación de la resolución apelada.

Procederemos a discutirlo:

"La Corte cometió error en su apelada sentencia o resolución de 14 de julio del 1937, por errónea interpretación del artículo 1308 de nuestro Código Civil (edición de 1930), así como de la jurisprudencia española interpretadora de dicho precepto legal."

La cuestión en controversia no consiste, como acertadamente sostiene el apelante, en determinar si al obligarse Francisco de la Torre a favor de The American Colonial Bank of Puerto Rico, lo hizo en carácter de deudor principal o fiador solidario. Él acepta la responsabilidad de la deuda. Sólo alega que tratándose de una transacción en beneficio exclusivo de otra persona, cual es doña Mercedes de la Torre, esta deuda no constituye una carga de la sociedad de gananciales y que por consiguiente para hacerla efectiva el acreedor, The National City Bank of New York, no puede embargar bienes de la sociedad conyugal, debiendo limitar su embargo a los privativos del Sr. de la Torre. Ésa, a nuestro juicio, es la única cuestión a resolver.

A primera vista, si no se tiene en cuenta la naturaleza especial de la sociedad de gananciales, parece absurdo sostener que no tratándose de un crédito contra dicha sociedad pueda aquél hacerse efectivo en bienes de ésta, cuando aún no puede predecirse si al tiempo de liquidarla el cónyuge deudor habrá de recibir bienes suficientes con que reintegrar dicha suma al acervo de la comunidad. Pero es que la de

gananciales es una sociedad *sui generis* distinta de las demás sociedades. En ella el marido es un administrador con poderes tan amplios y absolutos que con razón se afirma que en sus relaciones con terceros la sociedad y el marido son la misma entidad, existiendo la diferencia solamente en las relaciones de los esposos *inter se*. La posición de la mujer es puramente pasiva: bien o mal el marido administra y paga sus deudas, tanto las privativas suyas como las conyugales, sin que la mujer pueda intervenir. Sólo tiene derecho ella a esperar que la sociedad termine por alguno de los medios que determina la ley, y es entonces, en el momento de la liquidación, que surge su derecho a exigir que se deduzcan de la participación del marido todas aquellas cantidades que éste hubiese satisfecho con fondos de la sociedad de gananciales. En otras palabras, el interés de la esposa en la sociedad conyugal mientras ésta subsiste es una mera expectación o esperanza de participar en la mitad del activo líquido que pueda resultar luego de liquidada la sociedad. Refiriéndose a las facultades absolutas del marido en la sociedad de gananciales, dice Manresa:

"De este exceso de facultades del marido se deducen dos consecuencias importantes. Una de ellas es, que durante la existencia de la sociedad de gananciales o hasta el momento de su terminación, los derechos de los cónyuges son muy desiguales, asignándose a la mujer una situación pasiva y un puesto secundario. Es la otra, que *ante los terceros, el marido y la sociedad son, en términos generales, una sola y misma cosa, algo que se confunde y se identifica en cuanto es posible sostener tal confusión.*" Comentarios al Código Civil, tomo 9, pág. 652. (Bastardillas nuestras.)

"Del análisis y combinación de todas las disposiciones citadas, y de las demás que con ellas se relacionan, resulta que la mujer no puede hacer que queden sin efecto durante el matrimonio los actos ilegales o fraudulentos realizados por su marido, sino cuando se disuelva y liquide la sociedad. Entonces es cuando el marido debe aportar a ella numéricamente el valor de las enajenaciones que hubiese hecho ilegalmente o en fraude de la mujer. Estos valores se suman con los que resultan como gananciales al disolverse la sociedad, y la suma total se distribuirá por mitad entre el marido y la mujer

o sus herederos respectivos, adjudicándose en pago al marido lo aportado o colacionado por el mismo. Si resultan bienes bastantes para pagar a la mujer sus aportaciones matrimoniales y su mitad de gananciales, no hay razón para dejar sin efecto las enajenaciones hechas por el marido, ni tiene la mujer derecho para pedir la nulidad de tales actos, puesto que no le perjudican.

"Si, por el contrario, la mujer no puede ser indemnizada en esa forma y sufre perjuicio, se impone la necesidad de anular el acto ilegal o fraudulento. No existe en este caso obstáculo legal que impida a la mujer el ejercicio de la acción de nulidad, porque ésta corresponde a los obligados principal o subsidiariamente por el acto o contrato y obligada queda la mujer por los actos del marido como partícipe en los bienes gananciales. *Para el ejercicio de la acción deben concederse a la mujer cuatro años, a contar desde la disolución del matrimonio, o desde la terminación por otra causa de la sociedad de gananciales.*" (Id., pág. 662.) (Bastardillas nuestras.)

Scaevola las comenta en la siguiente forma:

"Prácticamente, normalmente, la sociedad de gananciales, a la que concurren los mismos bienes peculiares de cada cónyuge, soporta y paga todo género de obligaciones del matrimonio, incluso las deudas privativas. Si en cada momento hubiera de determinarse, con arreglo a las prescripciones de esta sección, lo que correspondía pagar con los bienes comunes que enumera el artículo 1401, o con los peculiares de cada cónyuge, el matrimonio de menos elementos de vida necesitaría un tenedor de libros permanente.

"En casos especiales de extraordinario desarreglo del marido, cabe la cuestión, como más adelante veremos, de si tales o cuales bienes, éstos o aquéllos rendimientos comunes, se han utilizado con arreglo a las disposiciones de la sección presente, o, por el contrario, con olvido absoluto del fin en que se inspiran. *Pero el objeto principal de las mismas tiene relación con el momento en que se liquida la sociedad de los cónyuges; para determinar, entonces, así de las obligaciones pendientes como de las satisfechas, las que deben pesar particularmente sobre los bienes de cada uno y las que gravarán a la comunidad.*" Scaevola, Código Civil, tomo 22, pág. 236. (Bastardillas nuestras.)

En Argentina, cuyo Código Civil en su artículo 1280 prescribe que "el marido responde de las obligaciones contraídas por él antes o después de celebrado el matrimonio, sin perjuicio de los abonos que deba hacer a la sociedad o la socie-

dad al marido," el Prof. Baldomero Llerena, comentándolo en su obra "Concordancias y Comentarios del Código Civil Argentino", tercera edición, tomo 4, pág. 395, dice:

"*El marido responde.*—Esta responsabilidad es con los bienes propios y con los de la sociedad. El artículo 1283 legisla el mismo caso con respecto a la mujer, pero en una redacción mucho más clara que la del presente.

"*Sin perjuicio de los abonos, etc.*—Como hemos visto en la primera parte de este artículo, *los acreedores del marido pueden demandar se les pague, o con los bienes propios del marido, o con los de la sociedad, cualquiera que sea el origen de la deuda.* Pero como no es justo que la sociedad pague deudas anteriores al matrimonio, puesto que sólo las contraídas durante el matrimonio son cargos de la sociedad (artículo 1275, inc. 3), o que sean exclusivamente del marido y no de la sociedad, *la ley le da derecho a la mujer, por esta segunda parte, para que, al disolverse la sociedad,* se le ponga en cuenta, o, más bien dicho, se descuente de lo que haya de corresponder al marido, la parte que ha sacado para pagar la deuda a la cual la mujer no estaba obligada a contribuir.

"*Es de advertir que este reclamo de la mujer sólo puede tener lugar al disolverse la sociedad, o por lo menos después de pagados los acreedores, pues ella no puede oponer tercería en razón de los gananciales que le correspondan en la sociedad, cuando se ejecuten estos bienes para el pago de las deudas del marido, ya sean éstas anteriores o posteriores al matrimonio. Todos los bienes gananciales, como todos los del marido, están afectos al pago de las deudas de éste, como lo están los primeros y los de la mujer en el caso del artículo 1283.* (Bastardillas nuestras.)

"La mujer, y en su caso el marido, sólo puede reclamar cuando se han embargado bienes del uno para el pago de las deudas del otro o de la sociedad, cuando el que reclama en este último caso no ha sido el administrador de la sociedad (artículo 1282). (Véanse los dos artículos siguientes.)"

El sabio civilista francés Troplong, en su obra "El Contrato de Matrimonio", tomo 2, pág. 136, describe así los derechos de la esposa en la sociedad de gananciales:

"Los derechos de la esposa están latentes durante el matrimonio, porque el marido es el encargado de vigilar y administrar los asuntos de la sociedad conyugal. Pero este derecho, que permanece inerte

mientras el marido esté a la cabeza de los asuntos de la comunidad, se torna activo cuando la autoridad matrimonial deja de existir. La esposa es como un socio comanditario, cuyos derechos surgen y se revelan cuando la sociedad cesa.''

La jurisprudencia francesa afirma que mientras la sociedad conyugal existe la mujer sólo tiene una esperanza o expectación y por consiguiente no tiene interés o derecho alguno sobre los bienes de la sociedad hasta que ésta se disuelve. De ahí que se haya generalizado la expresión de que *la sociedad de gananciales es una sociedad que principia en su terminación.*

En el caso de *Garrozi* v. *Dastas,* 204 U.S. 64, (51 L. Ed. 369), el entonces Juez Asociado Sr. White, cuya autoridad como civilista es indiscutible, hace un estudio comparativo de esta institución en Francia, España, Louisiana y Puerto Rico, cuya lectura recomendamos. Dice el Juez White:

''El apelante admitió en su argumentación que existe una semejanza sustancial entre la sociedad de gananciales bajo el Código Napoleón y bajo la ley española anterior al Código Civil, así como la que ahora existe, tanto bajo el Código Civil español como el de Puerto Rico. Naturalmente, ese argumento se refiere y está basado en algunas de las disposiciones del Código Napoleón. Además, cuando se considera que la antigua ley española y la formulada en el código de 1889 o en el de Puerto Rico de 1902 no confieren autoridad a la esposa para obtener la disolución judicial de la sociedad conyugal por el mero hecho de extraordinario desarreglo del marido en relación con los asuntos de la sociedad, demuestra que las facultades del esposo bajo el sistema español son en principio más amplias que bajo el Código Napoleón y los códigos que lo han adoptado o seguido. La autoridad general del marido como jefe y dueño de los bienes de la comunidad bajo la ley de Louisiana, el Código Napoleón y la ley española fué claramente expuesta por la Corte Suprema de Louisiana en *Guice* v. *Lawrence,* 2 La. Ann. 226, en la siguiente forma:

'' 'Las leyes de Louisiana nunca han reconocido en la mujer, durante el matrimonio, título alguno a la mitad de los gananciales. La ley española sobre la materia ha sido expuesta por Febrero con su acostumbrada precisión. La propiedad de la esposa, dice dicho autor, es revocable y ficticia durante el matrimonio. Mientras viva el es-

poso y el matrimonio no se haya disuelto, la esposa no puede decir que tiene gananciales, ni puede ella impedir que el esposo haga uso de tales bienes, so pretexto de que la ley le conceda una mitad de los gananciales. Pero, disuelto el matrimonio (*soluto matrimonio*), ella se convierte irrevocablemente en dueña de la mitad indivisa en la forma provista por la ley en la comunidad de bienes. El maridó es, durante el matrimonio, *real y verdadero dueño de todo y tiene en efecto su dominio irrevocable.* Febrero Adic., tomos 1 y 4, parte 2da., libro 1, cap. 4, pár. 1, núms. 29 y 30. Pothier, communaute, pág. 35 y siguientes. 12 Toullier, cap. 2, núms. 22 a 31. 14 Duranton, Droit Franc., pág. 281 y siguientes; 10 Dalloz, Jurisp., pág. 198 y siguientes.

" 'Las disposiciones de nuestro Código sobre la materia son una adopción o incorporación de la ley española sin variación alguna. El esposo es jefe y dueño de la comunidad y tiene la facultad de enajenar los inmuebles de la sociedad sin el consentimiento o autorización de la esposa. Código Civil, artículo 2373.'

"Es verdad que en el Código puertorriqueño de 1902 se insertó una disposición, a que antes hemos hecho referencia (artículo 1328), limitando la facultad que tiene el marido de disponer de los bienes inmuebles de la sociedad conyugal sin el consentimiento de la esposa. Pero esta restricción expresa en cuanto a una clase determinada de bienes, razonando *a contrario sensu,* no es otra cosa que una confirmación de la facultad del marido como jefe y dueño de la comunidad con respecto al resto de los bienes."

Apliquemos al caso que nos ocupa los principios legales arriba enunciados. El peticionario, Sr. de la Torre, pone gran énfasis en la circunstancia de que el Banco, al aceptar su garantía, sabía o por lo menos tenía motivos para creer que no se trataba de una transacción en beneficio de o relacionada con la sociedad conyugal. Pero como para los terceros que contratan con el marido éste y la sociedad de gananciales son lo mismo, el Banco demandante, al aceptar la garantía del Sr. de la Torre, confió o debió confiar en que de acuerdo con la ley podía hacer efectiva la garantía ofrecídale tanto en los bienes privativos del garantizador como en los bienes de la sociedad conyugal. De manera, pues, que a menos que expresamente se convenga que el acreedor no podrá hacer

efectivo su crédito con los bienes gananciales, en cuyo caso el contrato es ley entre las partes, su derecho a dirigirse contra los bienes gananciales está fuera de toda discusión. Y si, como hemos visto, el derecho de la mujer sobre los bienes gananciales no surge hasta que termina la sociedad, no puede el marido asumir la defensa de derechos que aún no tienen vida. Por consiguiente, tenemos que llegar a la ineludible conclusión de que al embargar el demandante los bienes de la sociedad de gananciales en este caso hizo uso de un derecho que le reconoce la ley.

A riesgo de resultar prolijos, deseamos aclarar que los principios aquí enunciados no deben interpretarse en el sentido de autorizar al marido para enajenar o gravar los bienes inmuebles de la sociedad conyugal sin el consentimiento expreso de la esposa. Es ésta una limitación que en este país ha sufrido la institución de la sociedad de gananciales, limitación que en manera alguna afecta la conclusión a que hemos llegado, porque no se trata en este caso de una voluntaria enajenación o gravamen de bienes inmuebles, sino de la aplicación de estos bienes al pago de deudas y responsabilidades contraídas por el marido.

Finalmente deseamos consignar que los casos citados por el apelante, procedentes del estado de Washington, no tienen aplicación al presente por estar basados en disposiciones estatutarias peculiares de dicho Estado que no existen en las demás jurisdicciones donde impera la institución jurídica de la sociedad de gananciales.

*Por lo expuesto, procede desestimar el recurso y confirmar la resolución apelada.*

El Juez Presidente Sr. Del Toro no intervino.

El Juez Asociado Sr. Hutchison está conforme con el resultado.*

---

* NOTA: Véase el prefacio.