ELOÍSA ANNONI, ET ALS., demandantes y apelantes, *v.* LA SUCESIÓN DE BLAS NADAL Y CUEBAS, ETC., ET ALS., demandados y apelados.

Núm. 8287.—*Sometido:* Diciembre 4, 1941. *Resuelto:* Diciembre 23, 1941.

*José Sabater,* abogado de las apelantes: *Frank Martínez,* abogado de la Sucn. de Juan Bianchi Rosafa y Guillermo Cabrera, apelados; *Oscar Souffront,* abogado de Carmen María Nadal y Carrión, apelada.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

En una apelación anterior de este mismo caso, *Annoni* v. *Sucn. Nadal,* 50 D.P.R. 520, esta Corte confirmó la sentencia dictada por la corte inferior presidida por un juez en comisión nombrado por el Gobernador de Puerto Rico por haberse inhibido el juez en propiedad. La Corte de Circuito de Apelaciones del Primer Circuito revocó la sentencia de esta corte, *Annoni* v. *Blas Nadal's Heirs,* 94 F. (2d) 513, por el fundamento siguiente:

"Somos de opinión que la Corte Suprema erró al sostener que Tomás Torres Pérez era un juez de facto, y el caso debe devolverse a la corte de distrito con instrucciones al juez en propiedad de dicha corte para que actúe de acuerdo con la sección 84 del Código de Enjuiciamiento Civil."

De manera que la Corte de Circuito en ningún momento entró a considerar el caso en sus méritos ni varió las conclusiones a que llegó esta corte sobre los mismos. El caso había sido resuelto en la corte inferior declarando con lugar las excepciones previas presentadas por las demandadas sobre falta de hechos suficientes en la demanda para cons-

tituir causas de acción y de prescripción y desestimando la demanda, y esta Corte confirmó dicha sentencia.

Devuelto el caso a la corte inferior, de acuerdo con la sentencia de la Corte de Circuito, y visto de nuevo ante el entonces juez en propiedad, dicha corte volvió a declarar con lugar las mismas excepciones previas antes mencionadas y es contra la sentencia declarando sin lugar la demanda, la que fué dictada a petición de los propios demandantes quienes alegaron que su demanda no era susceptible de ser enmendada, que se estableció el presente recurso.

 Están envueltas en él las mismas cuestiones legales planteadas y resueltas en el recurso anterior y un examen y estudio detenido de las alegaciones de la demanda y de los alegatos de las partes nos hacen llegar a la conclusión de que los hechos del caso y fundamentos expuestos por esta corte, por medio de su Juez Asociado Sr. Wolf, para confirmar la sentencia anterior, deben ser ratificados. Dichos hechos y fundamentos son los siguientes:

"La demanda en este caso fué radicada el 25 de febrero de 1931. En ella se solicitaba la nulidad de cierto procedimiento judicial iniciado por Salvador Nadal ante la extinguida Corte de Primera Instancia de Mayagüez, contra Nadal & Co., como liquidadora de la sociedad de Nadal & Cuebas. Uno de los fundamentos fué que el recurso era nulo e ineficaz bajo la ley entonces vigente. Otro fué que el procedimiento era nulo e ineficaz toda vez que el mismo era resultado de una conspiración fraguada por el referido Salvador Nadal y su primo Blas Nadal con el fin de defraudar a Ernesto Patxot y Blanch de su condominio en la hacienda Altagracia; que los demandantes son los herederos del aludido Ernesto Patxot y dueños de una participación de dicha finca y tienen derecho a poseérla en común con los demandados Juan Bianchi y Guillermo Cabrera. . . ."

" * * * * * * *

"Se presentaron excepciones previas por falta de hechos para determinar una causa de acción, indebida acumulación de acciones, indebida acumulación de partes demandadas, y prescripción. De la lectura que hemos hecho de la opinión vemos que la prescripción fué

la cuestión principal alegada para sostener la excepción pero, al igual que hicieron los apelados hasta cierto punto, discutiremos la suficiencia de la demanda. La prescripción se suponía aparecer de la faz de la demanda.

"Los motivos de nulidad alegados fueron:

" '(a) Que Salvador Nadal y Blas Nadal se habían confabulado para privar a Ernesto Patxot de ciertos derechos que tenía en la Hacienda Altagracia por virtud de un contrato privado que luego se elevó a escritura pública, (b) que Salvador Nadal ocultó al tribunal la verdad de los hechos y que no se citó a Ernesto Patxot, (c) que el crédito hipotecario por el cual ejecutó Salvador Nadal estaba ilíquido, sujeto a novaciones, se había cancelado por confusión de derechos y no se adeudaba por la Hacienda Altagracia, y (d) que, como consecuencia de los hechos anteriormente alegados la corte carecía de jurisdicción en el asunto.'

"Ahora bien, sucede, y no hay duda de ello, que Salvador Nadal compró o adquirió un crédito hipotecario existente contra la finca Altagracia y en su oportunidad lo ejecutó. La deudora, conforme se desprendía del registro, era sola y exclusivamente la sociedad de Nadal & Co. Así pues, necesariamente, bajo la ley hipotecaria y su reglamento, el acreedor tenía que proceder contra esa sociedad.

"Aparece de la demanda que Patxot había adquirido un interés en la Hacienda Altagracia y que el mismo nunca fué inscrito. La falta de inscripción no fué ocasionada por Salvador Nadal ni tampoco por Blas Nadal. Salvador Nadal si su hipoteca estaba vencida, tenía derecho a ejecutarla. No importa el conocimiento que tuviera, no estaba obligado por los convenios celebrados por Blas Nadal y Patxot. De la demanda se desprende que Patxot perdió la razón y que se le nombró una tutora. Un acreedor que ejecute solamente tiene que prestar atención al deudor que figura en el Registro. *Torres* v. *Lothrop, Luce & Co., et al.*, 16 D.P.R. 180; 231 U. S. 171."

" * * * * * * * *

"Las alegaciones de la demanda al efecto de que la hipoteca no había sido liquidada, que estaba sujeta a novaciones, y que surgió una confusión de derecho, no son alegaciones últimas de hechos (ultimate statements of facts). Son conclusiones de derecho que deben ser resueltas por la corte. El hecho de si la deuda estaba vencida o no dependía de los hechos al igual que la cuestión de novación o confusión de derecho. Uno de los apelados sugiere que este pleito es un ataque colateral y resolvemos que tiene razón. Patxot no era el deudor a que se refiere el artículo 175 del Regla-

mento de la Ley Hipotecaria. Él dejó de inscribir sus derechos y Salvador Nadal y los que de éste adquirieron, estaban protegidos por los artículos 33 y 34 de la Ley Hipotecaria. Estas consideraciones son especialmente ciertas en lo que a los supuestos dueños de la finca en la actualidad, Bianchi y Cabrera, se refieren.

"Los apelados discuten la cuestión de prescripción y citan ciertos casos. Ya que Salvador Nadal adquirió la propiedad en 1903 y Cabrera y Bianchi en 1907 sin que apareciera defecto alguno en el registro, no solamente corrió la prescripción ordinaria, sino también la extraordinaria si el título de Salvador Nadal puede agregarse al título adquirido por Bianchi y Cabrera, como así lo creemos. No podemos convenir con los apelantes en que el título de Salvador Nadal era enteramente inexistente. Esto sería ir contra la jurisprudencia citada."

Ampliando las anteriores consideraciones podemos decir que los demandantes pretenden fundar su derecho a la reivindicación que solicitan, en un documento privado, elevado a escritura pública en 30 de agosto de 1895, a virtud del cual aparecía el causante de los demandantes, Ernesto Patxot Blanch, adquiriendo de Blas Nadal una mitad de la Hacienda Altagracia. Sin embargo, no se alega en la demanda que dicho documento fuera inscrito o mencionado en el Registro de la Propiedad en forma alguna. Es obvio, pues, que no habiendo sido parte en dicho documento Salvador Nadal, causante de la sucesión codemandada, nada le impedía ejecutar, como ejecutó, su crédito hipotecario vencido sobre la Hacienda Altagracia sin hacer parte a Ernesto Patxot Blanch, que ningún derecho sobre dicha hacienda tenía inscrito en el Registro. Artículo 128 y siguientes de la Ley Hipotecaria y 168 y siguientes del reglamento.

Más fuerte aun es la posición de la codemandada Sucesión de Bianchi y Cabrera, pues al comprar la hacienda Altagracia a la persona que, según el registro, aparecía con derecho a venderla y sin que del mismo registro aparecieran claramente las causas de nulidad alegadas por los demandantes, deben considerarse como terceros de acuerdo con el artículo 34 de la Ley Hipotecaria. Véanse, entre otros, los

casos de *El Pueblo* v. *Riera*, 27 D.P.R. 1; *Ayllón y Ojeda* v. *González y Fernández*, 28 D.P.R. 67; y la opinión disidente del Juez Asociado de esta corte, Sr. Texidor, en el caso de *Pérez Casalduc* v. *Díaz Mediavilla*, 41 D.P.R. 973, que prevaleció al ser revocado dicho caso por la Corte de Circuito de Apelaciones en *Díaz, et als.* v. *Pérez*, 54 F. (2d) 588. Dicho ilustre Magistrado se expresó, en parte, así:

"El artículo 34 que citamos es uno de los más discutidos y comentados de la ley. Era evidente que la circunstancia de hallarse inscrito un acto, o un contrato aparente, realizados en violación de la ley, no podría hacerlos prevalecer como buenos y perfectos. Pero, como la Ley Hipotecaria es de garantía con respecto a terceros, y como para la inscripción de actos y contratos, se exigen requisitos estrictos y la intervención y calificación de documentos por un registrador abogado, que tiene la facultad de negar la inscripción a los actos y contratos nulos, tenía que darse valor y eficacia a la inscripción ya hecha, si de ella no resultara un vicio que hiciera nulo el acto o contrato. Si resultara, el futuro comprador, y el adquirente de derechos sobre la finca así inscrita, adquiriría a sabiendas de la existencia de una causa de nulidad, de la que estaba avisado por el mismo registro de la propiedad; y si la causa no resultara de la inscripción, el adquirente se hallaría protegido por ese hecho.

" ✻ ✻ ✻ ✻ ✻ ✻ ✻

" . . . Por esto, el artículo 34 no habla simplemente de causas que no resulten del mismo registro, sino de 'causas que no resulten *claramente* del mismo registro' (bastardillas nuestras). Porque no se trata de requerir el estudio de un abogado experto en Ley Hipotecaria, sino de que cualquiera persona de mediana instrucción pueda ver si resulta, o no, del registro, la causa de nulidad. La interpretación hecha por la jurisprudencia está de acuerdo con esta teoría." (Citas.)

" ✻ ✻ ✻ ✻ ✻ ✻ ✻

"Siguiendo tal doctrina y tal razonamiento, sería preciso que hubiéramos visto que las causas de nulidad resultaban afirmativa y claramente del mismo registro, para que nos decidiéramos a confirmar la sentencia apelada, declarando de ese modo que los sucesivos adquirentes de la finca tenían noticia legal de la existencia de determinadas faltas o causas de nulidad. Y a nuestro juicio, no resultan

tales causas, de manera afirmativa, y claramente. Y sobre los méritos de una inscripción en el registro, de la que no aparecen afirmativa y claramente causas de nulidad, se realizan las adquisiciones posteriores de la finca, la que poseen por largos años los sucesivos adquirentes, de buena fe, y sin que los pretendidos partícipes en la propiedad hagan reclamación alguna a los poseedores.

"El Tribunal Supremo de España, en sentencia de 25 de noviembre de 1890, caso *Ramón Valdés contra el Ayuntamiento de Oviedo,* tomo 68 Jurisprudencia Civil, páginas 426 a 432, sostuvo que:

" '. . . el principio jurídico de que lo que es nulo desde su origen no puede convalecer por el transcurso del tiempo, no es ilimitado o absoluto, y sólo debe entenderse aplicable, según tiene declarado el Tribunal Supremo, cuando la ley, dadas ciertas circunstancias, no reconoce o crea un derecho que hay que respetar.' "

Esta doctrina es aplicable al caso de autos. No se alega en la demanda que los supuestos vicios de nulidad en el título que adquirieron los codemandados Bianchi y Cabrera aparecieran claramente del Registro. Patxot nunca inscribió su alegada adquisición de la mitad de la Hacienda Altagracia; Salvador Nadal ejecutó su crédito hipotecario y dicha finca le fué adjudicada en 26 de diciembre de 1899 y la vendió a Bianchi y Cabrera en 10 de abril de 1907. La demanda fué radicada el 25 de febrero de 1931. Es obvio que la acción está prescrita (artículo 1863 del Código Civil).

■■ El hecho de que se alegue en la demanda que en el año 1912 se radicó una acción similar la que no fué resuelta por sus méritos por haberse dictado sentencia por abandono de la acción, no interrumpió la prescripción en este caso, primero, porque de acuerdo con la demanda de autos aparece que los codemandados Bianchi y Cabrera no fueron hechos partes demandadas en la anterior acción, y, por tanto, en nada pudo afectar sus derechos, y segundo, porque, el Código Civil en su artículo 1843 provee que la posesión se interrumpe para los efectos de la prescripción, natural o civilmente, y en cuanto a esto último dispone el artículo

1845 que se produce por la citación judicial hecha al poseedor, aunque sea por mandato de tribunal o juez incompetente. Dispone entonces el artículo 1846 lo siguiente:

"Artículo 1846.—Se considerará no hecha y dejará de producir interrupción la citación judicial:

"1.— * * * * * * *

"2.—Si el actor desistiere de la demanda o dejare caducar la instancia.

"3.—Si el poseedor fuere absuelto en la demanda."

Aplicando estos incisos, esta corte en el caso de *Calderón v. Sociedad de Auxilio Mutuo*, 42 D.P.R. 414, a la página 420 se expresó así:

"Según demuestran los incisos segundo y tercero del artículo 1847, la interrupción civil a que se refiere el 1846 depende de que el demandante prosiga su pleito hasta una terminación victoriosa. 12 Manresa 802, 804. Una acción sin éxito, que no resulte en cambio alguno de posesión, no interrumpe el transcurso del período estatutario. El resultado es el mismo, ya desista voluntariamente el demandante, o *se le desestime su acción por abandono*. 12 C. J. 109, sec. 166." (Itálicas nuestras.)

La cita que en dicho caso se hace de Manresa, es en parte, la siguiente:

". . . Las consecuencias de la caducidad son las mismas que hemos expuesto al hablar del desistimiento, y por idéntica razón de derecho deben ser iguales también las consecuencias jurídicas en ambos casos.

"Para evitar posibles dudas, en la inteligencia de dicho precepto, conviene indicar que de ningún modo debe confundirse la caducidad de la instancia con la prescripción de la acción ejercitada en la demanda, pues los efectos de una y otra son bien distintos. La caducidad no es la prescripción de la acción, como lo demuestra el que después de caducada la primera instancia puede promoverse de nuevo el juicio entablando otra demanda nueva en la que se ejercite la misma acción utilizada en la anterior, *si para entonces no hubiere prescrito ya . . .*" (Itálicas nuestras.)

Y esto es lo que han pretendido hacer los demandantes al promover esta nueva demanda ejercitando la misma acción utilizada en el año 1912, pero cuando lo hicieron en el año 1931 ya dicha acción había prescrito.

*Se confirma la sentencia apelada.*

El Juez Presidente Sr. Del Toro no intervino.