CELIA OLMEDO WOOD, demandante y apelada, *v.* ROMUALDO RIVERA, PABLO MELÉNDEZ y PHILIP EL KOURY, demandados y apelantes.

Núm. 9007.—*Sometido:* Marzo 7, 1945. *Resuelto:* Mayo 21, 1945.

*E. Martínez Rivera,* abogado de los apelantes; *Miguel Olmedo Toste,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Romualdo Rivera contrajo matrimonio con la demandante en 1918 divorciándose en 1935. En 1920 el matrimonio compró un solar en el que edificaron una casa en 1922. Dicha propiedad pertenecía a la sociedad de gananciales, que todavía está sin liquidar. Aun cuando a los fines contributivos la propiedad está tasada en $1,500, la prueba no controvertida fué al efecto de que por lo menos valía $3,000.

El 28 de marzo de 1938 Pablo Meléndez—amigo y compañero de Rivera, quien era un Inspector de Contribuciones sobre Ingresos—entabló demanda en cobro de dinero contra Rivera. La demanda alegaba que Rivera había otorgado un pagaré el 15 de mayo de 1934 a favor de Meléndez por la suma de $900, y que el pagaré había vencido el 30 de junio de 1935—antes del divorcio—pero que no había sido pagado. La demanda también alegaba que Rivera aún estaba casado, si bien, como hemos visto, esto ya no era cierto.

Se dictó contra Rivera sentencia en rebeldía por $900, más $100 para costas y desembolsos. El 23 de abril de 1938 Rivera renunció a su derecho de apelación con el fin de facilitarle a Meléndez la inmediata ejecución de la sentencia. El 25 de mayo de 1938 el solar y la casa se vendieron en pública subasta por $500 a Philip El Koury, en ejecución de la referida sentencia. La demandante no fué parte en dicho pleito, y nunca se le notificó de procedimiento alguno.

El 14 de julio de 1938 la demandante radicó el presente pleito contra Meléndez, Rivera y El Koury, solicitando la nulidad de la sentencia dictada en el pleito de Meléndez contra Rivera y del embargo y venta de la referida propiedad a El Koury, en lo que pudiera afectar su participación de la mitad en la referida propiedad como miembro de la sociedad de gananciales. La demandante alegó que el pagaré se había simulado con el fin de privarla de sus derechos en los bienes gananciales. Después de un juicio en los méritos,

la corte de distrito dictó sentencia a favor de la demandante, y los demandados han apelado.

■■ El juez de distrito emitió una hábil y juiciosa opinión en la que, después de analizar la prueba, llegó a la conclusión que el pagaré era simulado y se otorgó con el único fin de defraudar a la demandante en sus derechos en la propiedad en cuestión. No vamos a repetir toda la prueba. Basta decir que la conclusión de la corte inferior en cuanto a este punto está ampliamente sostenida por la prueba y enteramente convenimos con ella. Este caso está plagado de fraude y lo referiremos al Fiscal de esta Corte para que determine si el abogado que representó a Rivera cuando se fraguó y consumó el elaborado plan aquí envuelto actuó impropiamente. Sin embargo, haciendo justicia a los actuales abogados de los demandados, queremos hacer constar que se hicieron cargo de este asunto después de haberse radicado la demanda en este caso.

Rivera, Meléndez y El Koury estuvieron representados en el juicio de este caso ante la corte de distrito por el mismo abogado. Al empezar el juicio el abogado anunció que Rivera y Meléndez consentían en que se dictara sentencia contra ellos, debido a la duda en cuanto a si la sentencia contra Rivera en el caso incoado por Meléndez contra el primero en relación con el pagaré, podía afectar el interés de la demandante en los bienes gananciales, en virtud de los hechos de que (1) no se notificó del mismo a la demandante y (2) la demandante y Rivera se divorciaron antes de radicarse el pleito de Meléndez. Pero toda vez que este mismo abogado anunció que El Koury continuaría resistiendo la reclamación aquí envuelta por el fundamento de que era un comprador de buena fe en la subasta de la propiedad, la corte de distrito muy sabiamente oyó prueba en cuanto al fraude de Rivera y Meléndez para poder determinar si El Koury estaba envuelto en el mismo. Además, hay una razón adicional por la cual la estratagema de los demandados

para evitar se adujera prueba en cuanto al fraude fué propiamente impedida por la corte de distrito. Anular una sentencia debido a la falta de notificación o de inclusión de una parte, tiene un efecto legal enteramente diferente que si se anulara tal sentencia debido a que el pagaré de que se trata se simuló fraudulentamente. Bajo la primera teoría sólo se necesitaría entablar un nuevo pleito con la debida notificación e inclusión de partes; pero de prevalecer la segunda, la alegada obligación deja de existir sin remedio alguno.

La corte de distrito resolvió que "la prueba no es lo suficientemente fuerte para convencernos de la participación fraudulenta de El Koury en la conspiración de Meléndez y Rivera". Sin embargo la corte de distrito dictó sentencia contra los tres demandados. Falló en contra de El Koury en la teoría de que una vez disuelto el vínculo matrimonial entre la demandante y Rivera, la demandante adquirió un derecho a la mitad de los bienes gananciales; y que El Koury no era un tercero bajo la Ley Hipotecaria porque, si bien el Registro de la Propiedad demostraba que los bienes estaban inscritos a nombre de Rivera y de la demandante como su esposa, era el deber de El Koury determinar si se había disuelto la sociedad de gananciales por sentencia de divorcio, "que era una sentencia *in rem, Estate of Lee,* 200 Cal. 310, que opera sobre el *status* matrimonial que es el *res,* [y que] fué una noticia a todo el mundo que tal sentencia había sido dictada, obligatoria para todos, y de la cual todos tenían que tomar conocimiento."(1) (Corchetes nuestros).

Aceptamos la conclusión de la corte de distrito sobre los hechos en cuanto a la participación fraudulenta de El Koury en el plan para defraudar a la demandante. Pero no nos detenemos a examinar su teoría al efecto de que a El Koury

---

(1) La corte de distrito citó extensamente de *Roemer* v. *Taylor,* 128 S.W. 685 (Tex., 1910), en apoyo de esta teoría.

se le podía imputar, como cuestión de 'derecho, el conocimiento constructivo del divorcio. No es necesario examinarla, porque estamos satisfechos de toda la prueba y de las circunstancias concurrentes que El Koury tenía conocimiento efectivo de todos los hechos el día de la subasta, y por tanto es imposible que sea un tercero bajo el artículo 34 de la Ley Hipotecaria (*Cf. Larracuenta* v. *Fabián,* 56 D.P.R. 775, 789; *Escalera* v. *West India Oil Co.,* 43 D.P.R. 574; *Ayllón et al.* v. *González et al.,* 28 D.P.R. 67; *Annoni* v. *Sucesión Nadal,* 59 D.P.R. 640, 644-5; Sección 7, Ley de marzo 9, 1905, como aparece a la página 123, Código de Enjuiciamiento Civil, ed. 1933. Véase *National City Bank* v. *De La Torre et al.,* 54 D.P.R. 233; 54 D.P.R. 685).

Convenimos con la demandante en que "la prueba indica que El Koury fué sólo un agente de Rivera, que no fué comprador de buena fe, y que no fué sino un testaferro". Rivera, un Inspector de Contribuciones sobre Ingresos, había llevado los libros de El Koury hasta que un reglamento del Departamento de Hacienda prohibió esta práctica, por lo que Rivera obtuvo la misma colocación para su hija. Y en el contrainterrogatorio a que lo sometió *el abogado de El Koury,* Rivera declaró como sigue:(²)

"P. ¿Si la parte contraria hubiera aceptado la transacción sugerida por el señor juez de readquirir esa propiedad mediante el pago de los $500 al Koury, esa cantidad la hubiera pagado usted? R. La hubiera pagado yo. Cualquiera que hubiera sido el resultado del juicio, yo pagaría eso. P. ¿Por qué fué que el señor Philip El Koury intervino en este asunto, porque tenía interés en esta casa? R. Por insinuación mía. P. ¿A qué se debió esa insinuación? R. Que yo quería conservar la casa, que no se fuera a presentar un postor y fuera a llevarse la casa. P. ¿Entonces, en esa época, trabajaba su hija en la oficina del Señor Philip El Koury? R. Sí, señor. ¿Habremos de entender, entonces, que lo que usted hacía era evitando que esa casa cayera en manos de otra persona de quien usted no

---

(²)Como notaremos más adelante, este caso se vió dos veces. Rivera declaró en la primera vista, pero no en la segunda. El testimonio citado es tomado de la transcripción de su declaración en la primera vista, la cual fué presentada como *exhibit* por la demandante.

pudiera readquirirla en el futuro? R. Eso mismo. P. ¿Y dice usted que cualquiera que sea el resultado de este pleito, esa casa, tarde o temprano, será para sus hijitas? R. Lo digo delante de mi hija y no viviría tranquilo si yo no cumpliera eso''.

Las partes aquí envueltas fueron o extremadamente ingenuas o completamente cínicas en la manera que llevaron a efecto la ''venta'' a El Koury. La propiedad, valorada por lo menos en $3,000, se vendió en ejecución de una sentencia de $1,000. El supuesto acreedor, Meléndez, ''recibió'' solamente $500. Meléndez no se ocupó de hacer una oferta equivalente al importe de la sentencia; Rivera no se ocupó de hacer una oferta por el valor de la propiedad. Por el contrario, los bienes se ''vendieron'' a El Koury por $500, el márshal expidió a Meléndez un cheque por dicha cantidad, quien lo endosó y se lo dió a Rivera, haciéndolo éste efectivo. Lo que Rivera hizo con el dinero no se sabe. Pero es difícil creer que El Koury, el testaferro, no recibiera el dinero de Rivera como reembolso por los $500 que él aportó como ''precio de venta'' en la subasta.

Después de la ''compra'' hecha por El Koury, Rivera, según la declaración de su hija, le pidió a su esposa, a través de aquélla, que firmara un documento que Rivera llamó una ''hipoteca''. Al negarse la demandante a firmarlo, Rivera le dijo a su hija que a la larga él obtendría la propiedad de cualquier modo. En el referido documento, que nunca se firmó pero que se introdujo aquí en evidencia, El Koury aparece ''vendiendo'' la propiedad — valorada en $3,000—a Rivera y a la demandante por $1,100, y Rivera y la demandante aparecen hipotecándola a Gonzalo Aponte por $1,100. Pero Rivera habló con su hija de una hipoteca, y no de una venta. No le habló de *readquirir* la propiedad; sólo discutió de *hipotecarla*. En verdad, en su propia declaración, olvidándose de que El Koury ya había ''comprado'' la propiedad, inadvertidamente se le escapó la verdad al hablar de *hipotecarla para salvar la casa*. Y el hecho de

que Rivera todavía actuaba como si fuera el dueño se desprende también del recibo de contribuciones para 1940–41 en que aparece él como dueño.

Hay todavía otro episodio que arroja luz en cuanto a la verdadera situación. Como más adelante se notará, este caso estuvo ante esta Corte en una ocasión anterior, cuando se devolvió a la corte de distrito para que ésta actuara sobre una posible moción de nuevo juicio. Se radicó tal moción y se declaró con lugar. Pero antes de que se declarara con lugar la moción, el abogado de El Koury, Rivera y Meléndez obtuvo una resolución de la corte de distrito cancelando el aviso de *lis pendens* de este pleito anotado en el Registro.(3) La orden de cancelación de lis pendens se obtuvo el 15 de febrero de 1941. Dos días después, el 17 de febrero, El Koury otorgó una escritura en la que intentaba vender la propiedad a un tal Balbino Balbín por $2,500. (Es de notarse que ésta era una venta de la propiedad que años antes estaba valorada en más de $3,000 y que Rivera permitió que se "vendiera" en la subasta por $500). Y Balbín en esa misma fecha aparece hipotecando la propiedad a la *segunda* esposa de Rivera por $1,000.

El último eslabón en esta serie de circunstancias es que El Koury nunca compareció en este caso a declarar o a explicar su posición en cuanto a todas las maniobras que se efectuaron para defraudar a la demandante. El mismo abogado que representó a estos tres demandados—Rivera, Meléndez y El Koury—optó por no traer al último a declarar.

Forzoso es concluir que El Koury tiene que haber conocido los hechos. Permitió que Rivera lo involucrara en esta situación. Debe pedirle a Rivera que lo saque de ella. Pero bajo todas las circunstancias la participación de la esposa en esta propiedad debe permanecer intocada por tal plan, el cual estamos satisfechos El Koury conocía cuando compró la

---

(3)A moción de la demandante, al enterarse de los hechos, la corte de distrito dejó sin efecto su orden y reinstaló el aviso de *lis pendens*.

propiedad en la subasta. Resolver lo contrario sería permitirle a Rivera evadir las consecuencias de esta conducta fraudulenta interponiendo un testaferro entre él y su víctima. Resolvemos que El Koury no era un tercero.

Este caso ha estado ante nos en otras ocasiones. La vista en sus méritos se celebró originalmente ante un juez de distrito que lo resolvió a favor de los demandados. Dicho juez murió sin haber aprobado la transcripción de la evidencia necesaria para la apelación entablada por la demandante ante este Tribunal. En una resolución *per curiam*, 57 D.P.R. 985–6, aunque técnicamente desestimamos dicha apelación, no cerramos el caso. Al contrario, lo devolvimos a la corte de distrito para que determinara dentro de su discreción si debía conceder un nuevo juicio. Actuando conforme a nuestra resolución, la corte de distrito concedió el nuevo juicio. Los demandados apelaron de dicha resolución. En una opinión formal desestimamos dicha apelación por frívola. 59 D.P.R. 487.

La parte apelante arguye vigorosamente aquí que nuestra resolución original reservándole a la demandante, una vez devuelto el caso, el derecho de solicitar de la corte de distrito un nuevo juicio, la resolución de la corte de distrito concediéndolo y nuestra confirmación de dicha resolución, caen todas fuera de la autoridad conferida por la ley de esta jurisdicción. Pero dicha cuestión necesariamente fué resuelta por nuestras opiniones en 57 D.P.R. y 59 D.P.R., especialmente en la última. La contestación allí dada constituye la ley de este caso. *Escartín* v. *Comisión de la Policía Insular,* 52 D.P.R. 725. Los pleitos deben terminar en algún momento. Solamente en un caso diferente estaríamos justificados en reexaminar la doctrina ya establecida para gobernar este caso. Por idénticos motivos, debe rechazarse el argumento de los apelantes de que el presente caso era *res judicata* de conformidad con nuestra sentencia en 57 D.P.R.

■ Tampoco encontramos mérito en la contención de que no se alegó adecuadamente un caso contra El Koury. Sin examinar en detalle las propias alegaciones, basta decir que las alegaciones deben considerarse como enmendadas para conformarlas a la prueba en cuanto a la cuestión del conocimiento de El Koury, especialmente toda vez que una considerable parte de la prueba sobre dicha cuestión surgió, como hemos visto, mediante el examen de los testigos efectuado por su propio abogado. Como cuestión de hecho, El Koury en su contestación interpuso como defensa que él era un tercero.

■ La última contención de los demandados es que la corte de distrito abusó de su discreción al imponerles el pago de honorarios de abogado por $500. La conducta de Rivera y Meléndez merece una palabra más severa que *temeridad*. Y El Koury, con conocimiento de las actuaciones de Rivera, permitió a éste que usara su nombre para perpetrar un fraude. Lejos de resolver que el juez de distrito abusó de su discreción al concederle a la demandante honorarios de abogado, le aplaudimos por su actuación.

*La sentencia de la corte de distrito será confirmada.*

El Juez Asociado Sr. De Jesús no intervino.