ARTURO IZQUIERDO, demandante y apelante, *v.* JULIO IZQUIERDO SERRANO, JOSEFA GODÍNEZ, ETC., ET AL., demandados y apelados.

Número 11494.

*Sometido:* 11 de junio de 1956. *Resuelto:* 26 de junio de 1957.

72

*Juan Nevárez Santiago,* abogado del apelante; *Diego Guerrero Noble* y *Carlos D. Vázquez,* abogados del apelado señor Godínez; *Emeterio C. Rodríguez* y *Baldomero Roig Vélez,* abogados de la apelada The West Indies Missions Board of the United Lutheran Church in America.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del Tribunal.

Arturo Izquierdo presentó demanda de "Nulidad, Reivindicación, Reclamación de Frutos y Otros Extremos" contra Julio Izquierdo Serrano, la sucesión de Josefa Godínez (indicando quiénes son sus componentes), The West Indies Missions Board of the United Lutheran Church in America, Inc., ([1]) y José Antonio Izquierdo Rivera. En la primera causa de acción de esa demanda se alegó que el Dr. Eladio

---

([1]) En lo sucesivo nos referiremos a The West Indies Missions Board of the United Lutheran Church in America simplemente como The Lutheran Church.

Izquierdo Serrano falleció sin haber otorgado testamento el 10 de octubre de 1932, sucediéndole como sus únicos y universales herederos sus hijos Alfredo Izquierdo Negrón y José A. Izquierdo Rivera; que a su fallecimiento el Dr. Izquierdo Serrano era dueño de las propiedades que se describen bajo las letras A, B, C, D, E, y F; que la finca descrita bajo la letra "A" figura inscrita en el Registro de la Propiedad de Bayamón como la núm. 606 de Cataño, y que en 11 de octubre de 1938 la misma fué subastada para el cobro de contribuciones sobre la propiedad y adjudicada a Josefa Godínez, y es ocupada al presente por el demandado Julio Izquierdo Serrano; que la descrita bajo la letra "B" es actualmente la núm. 640 de Cataño, fué subastada para el cobro de contribuciones en la fecha antes indicada y adjudicada a Josefa Godínez, y es asimismo ocupada al presente por el demandado Julio Izquierdo Serrano; que la descrita bajo la letra "C" fué también vendida en pública subasta para el cobro de contribuciones en la fecha indicada, adjudicada a Josefa Godínez, agrupada con las núms. 642, 610 y 640, formando entonces la finca núm. 660, y vendida según fué agrupada por la Godínez a María Felipa Viana, quien luego la vendió a Manuel Barreto Pérez y éste a The Lutheran Church, y se halla inscrita al folio 120 del tomo 9 de Cataño, comprendiendo la finca así agrupada las marcadas con las letras C, D y E; que la finca descrita bajo la letra "D" fué vendida en pública subasta el 24 de septiembre de 1938, adjudicada a Josefa Godínez y agrupada con la que se describe bajo la letra "C"; que la descrita bajo la letra "E" fué asimismo agrupada a la que figura bajo la letra "C", vendida en pública subasta en 30 de agosto de 1938, adjudicada a Josefa Godínez, vendida sucesivamente en la forma antes indicada y es ocupada actualmente por The Lutheran Church; que la finca descrita bajo la letra "F" fué vendida en pública subasta el 30 de agosto de 1938 y adjudicada a Josefa Godínez, y se halla actualmente en poder de Julio Izquierdo Serrano o The Lutheran Church; que estando las mencionadas fincas en poder de Julio Izquierdo

Serrano y de Josefa Godínez, éstos cobraban las rentas producidas y se las apropiaban para sí y en esas condiciones concibieron el plan de adjudicarse dichos bienes y de privar a los herederos legales del Dr. Eladio Izquierdo Serrano de las referidas propiedades; y que a pesar de recibir los ingresos necesarios para atender al pago de las contribuciones territoriales y de la conservación de las propiedades dichos Julio Izquierdo Serrano y Josefa Godínez dejaron de pagar las contribuciones correspondientes, con el fin calculado de causar, como efectivamente causaron, que las propiedades fuesen vendidas en las fechas indicadas y fueran adjudicadas a Josefa Godínez; que habiendo sucedido Alfredo Izquierdo Negrón y José A. Izquierdo Rivera al Dr. Eladio Izquierdo Serrano, en 27 de abril de 1936 Alfredo vendió todos sus derechos en la herencia a Manuela Quintero Izquierdo y Manuel Godínez Caloca por parte iguales; que la participación adquirida por Manuel Godínez Caloca lo fué con el fin de ocultar la verdadera adquirente de dicha participación que lo era su hermana Josefa Godínez; que Manuela Quintero Izquierdo cedió y vendió sus derechos y acciones en los bienes descritos al demandante Arturo Izquierdo por documento suscrito el 6 de abril de 1954 en la ciudad de Miami, Florida, siendo por consiguiente los dueños legales de las propiedades descritas Arturo Izquierdo en la proporción de un 25%, José Antonio Izquierdo Rivera en la proporción de un 50% y Manuel Godínez Caloca en la proporción de un 25%.

Como segunda causa de acción se alegó en la demanda que todas las fincas descritas bajo las letras A a F se vendieron en pública subasta, especificándose la fecha en que lo fueron y el precio por que se les vendió; que las mismas fueron adjudicadas a Josefa Godínez, quien estaba casada con el demandado Julio Izquierdo Serrano; y que todas y cada una de las aludidas subastas fueron obtenidas fraudulentamente con el propósito de privar a los herederos del Dr. Izquierdo Serrano de las referidas fincas, ya que en ninguna de ellas se notificó a los citados herederos para darles oportunidad de

redimir los bienes, no obstante el conocimiento que tenía el Tesorero de Puerto Rico de quiénes eran los herederos y cesionarios del Dr. Izquierdo Serrano al momento de iniciarse el procedimiento que culminó en la venta en pública subasta y adjudicación de todas y cada una de las propiedades a Josefa Godínez.

Como tercera causa de acción se alegó que siendo nulas las subastas de las indicadas fincas, son nulos también los traspasos verificados posteriormente por Josefa Godínez. Y como cuarta causa de acción se sostuvo que las propiedades descritas han producido o debido producir rentas montantes a la suma de $20,000.

También se alega en la demanda que se incluye a José A. Izquierdo Rivera como demandado y a los demandados de apellido Godínez, porque tanto uno como los otros son partes necesarias y se negaron a unirse a la demanda como demandantes; que se incluye a Julio Izquierdo Serrano como demandado en su calidad de cónyuge supérstite de Josefa Godínez; y que las propiedades en cuestión tienen un valor total de $50,000. Se solicita, entre otras cosas, que las inscripciones verificadas en el Registro de la Propiedad de Bayamón a favor de las personas indicadas sean canceladas.

A la anterior demanda The Lutheran Church, Manuel Godínez y Julio Izquierdo Serrano presentaron sendas mociones de desestimación, basadas en que aquélla no aduce hechos determinantes de una causa de acción. De la resolución dictada por el Tribunal Superior de Puerto Rico, Sala de Bayamón, sosteniendo la moción para desestimar presentada por la primera (The Lutheran Church) copiamos los siguientes párrafos:

"De la demanda aparece que la demandada 'The West Indies Missions Board of the United Lutheran Church in America, Inc.,' hubo la finca, dentro de la cual están agrupadas las vendidas en pública subasta para el cobro de contribuciones, por compra a don Manuel Barreto Pérez; que éste hubo la misma por compra

a doña María Felipa Viana; y que ésta la hubo por compra a doña Josefa Godínez, a quien fueron adjudicadas en las subastas mencionadas.

"No se alega en la demanda que los defectos indicados en la misma, si es que ellos existen, aparezcan del Registro de la Propiedad, y es doctrina constantemente sostenida por el Tribunal Supremo de Puerto Rico, que los actos o contratos que se ejecuten u otorguen por persona que en el Registro aparezca con derecho para ello, NO SE INVALIDARÁN EN CUANTO A TERCERO, una vez inscritos, aunque después se anule o resuelva el derecho del otorgante en virtud de título anterior no inscrito o DE CAUSAS QUE NO RESULTEN *CLARAMENTE* DEL MISMO REGISTRO. *Rodríguez* v. *Castaing*, 7 D.P.R. 370; *Expósito* v. *Robert,* 11 D.P.R. 14; *Avella* v. *Atanacio* (sic) *et al.,* 14 D.P.R. 498, y especialmente, *Annoni et als.* v. *Sucesión de Blas Nadal y Cuebas et als.,* 59 D.P.R. 640. También así lo dispone el art. 34 de la Ley Hipotecaria. Conviene advertir que si bien en la demanda se alega que Alfredo Izquierdo Negrón vendió todos sus derechos y acciones en la herencia del Dr. Eladio Izquierdo Serrano a Manuela Quintero Izquierdo y Manuel Godínez Caloca, por partes iguales para cada uno de ellos, en 27 de abril de 1936, y que Manuela Quintero cedió y vendió todos sus derechos y acciones al aquí demandante, en 6 de abril de 1954, no hay tampoco alegación alguna en la demanda al efecto de que tales derechos hereditarios y consiguientes cesiones y traspasos, hubiesen sido inscritos o mencionados en el Registro de la Propiedad a la fecha en que la propiedad fué adquirida por terceras personas. Por consiguiente, nada hay en el Registro, según la propia demanda, que pudiera servir de aviso a la demandada ya indicada, en cuanto a posibles reclamaciones contra ella, o en cuanto a los defectos alegados."

Solicitada reconsideración por el demandante, la misma fué declarada sin lugar. En relación con las otras dos mociones de desestimación el tribunal a quo concluyó "que esta demanda no aduce causa de acción contra ninguno de los demandados." Solicitó entonces el demandante que se dictara sentencia, por no ser la demanda susceptible de enmiendas. El tribunal dictó la sentencia interesada y de ella apeló el demandante.

■ La contención única del apelante es que el tribunal inferior erró "al declarar con lugar la moción para desestimar." Conforme dijimos en *Cruz* v. *Ramírez,* 75 D.P.R. 947, 950:

"... la suficiencia de una demanda debe considerarse a la luz de la situación más favorable al demandante y ... una demanda no debe desestimarse a menos que aparezca con certeza que el demandante no tiene derecho a remedio alguno bajo cualquier situación de hechos que pudieran probarse como fundamento de la reclamación. *Cruz* v. *Ortiz,* 74 D.P.R. 321, 325, y casos allí citados. Bajo el sistema de las Reglas de Enjuiciamiento Civil, el propósito de la demanda en sí no es el de depurar ni precisar exactamente las cuestiones litigiosas, sino el de notificar a la parte demandada la esencia de la reclamación en su contra. *Komer* v. *Shipley,* 154 F. 2d 861; *Moore* v. *Erie County Agr. Society,* 12 F.R.D. 6; Moore's *Federal Pratice,* segunda edición, tomo 2, págs. 1648, 1649, sección 8.13. Una razón básica para justificar ese liberalismo en la interpretación de una demanda se refiere al hecho de que las partes tienen acceso a otros remedios, bajo las reglas, para comprobar con más exactitud el contenido, la naturaleza detallada y los contornos de la reclamación de la parte demandante siendo esos remedios el descubrimiento, los interrogatorios y la conferencia anterior al juicio. *Hickman* v. *Taylor,* 329 U. S. 495, 500, 501; 2 Moore, ob. cit., pág. 1652, sec. 813."

■ Veamos, pues, si la demanda, interpretada a la luz de la situación más favorable al demandante, aduce causa de acción contra los demandados o cualquiera de ellos.

En lo que a The Lutheran Church respecta, es incuestionable que la demanda no aduce hechos determinantes de una causa de acción. De esa demanda se desprende claramente que una vez vendidas en pública subasta las propiedades descritas bajo las letras C, D y E,(²) las mismas se inscribieron en el Registro de la Propiedad a favor de la adjudicataria

---

(²) No nos referimos aquí específicamente a la finca descrita bajo la letra "F" porque en cuanto a ésta se dice en la demanda que la misma está actualmente en poder de Julio Izquierdo Serrano o The Lutheran Church, sin decirse a ciencia cierta en poder de cuál de ellos está, ni cómo esa finca llegó a poder de uno u otro.

Josefa Godínez; que ésta vendió dichas propiedades a María Felipa Viana, la que a su vez las traspasó a Manuel Barreto Pérez, de quien las hubo la demandada The West Indies Lutheran Church. De la demanda no se desprende, sin embargo, en forma alguna que en el Registro de la Propiedad aparezcan los vicios de que adolecieron las subastas, o cualesquiera defectos que pudieran anular el título de esa demandada. Siendo ello así, The Lutheran Church es un tercero que adquirió de buena fe. Contra ella no procede la causa de acción instada. Conforme se dice en el sumario del caso de *Pérez* v. *Cancel,* 76 D.P.R. 667:

> "Son terceros hipotecarios aquéllos que adquieran a título oneroso de una persona que a su vez adquirió en un procedimiento de apremio por contribuciones, cuando no se demuestra que ésta intervino en dicho procedimiento ni del Registro aparece claramente el defecto de que adoleciera su adquisición en el procedimiento en cuestión."

Véase, además, *Hernández* v. *Caraballo,* 74 D.P.R. 29, 37.

▮ Tampoco aduce la demanda una buena causa de acción contra Manuel Godínez Caloca. Se recordará que en ella se alega específicamente que el Dr. Izquierdo Serrano falleció ab intestato en 1932, dejando bienes, y sucediéndole como sus únicos y universales herederos sus hijos Alfredo Izquierdo Negrón y José A. Izquierdo Rivera, así como que en 1936 Alfredo vendió todos sus derechos en la citada herencia a Manuela Quintero Izquierdo y Manuel Godínez Caloca, por partes iguales, y que en 1954 Manuela cedió y vendió sus derechos y acciones en los referidos bienes al demandante Arturo Izquierdo. Siendo ello así el título del demandado Godínez Caloca, como adquirente del 25% de las propiedades, emana de la misma fuente que el del demandante. En su consecuencia, aun teniendo éste último éxito en su reclamación, tal éxito no podría en forma alguna afectar esa participación de Godínez Caloca. El demandante parece admitirlo así al alegar de manera taxativa en su demanda que los dueños de las propiedades descritas en ella lo son él (Arturo Izquierdo)

en la proporción de un 25%, José Antonio Izquierdo Rivera en la proporción de un 50% y Manuel Godínez Caloca en la proporción de un 25%. Por tanto, el tribunal a quo actuó acertadamente al declarar con lugar las mociones para desestimar, presentadas por The Lutheran Church y Manuel Godínez Caloca.

■■ Ahora bien, en lo que respecta a Julio Izquierdo Serrano, la situación es distinta. Él no es tercero. *Cf. Rivera* v. *Meléndez,* 72 D.P.R. 432, 439; *Olmedo* v. *Rivera,* 65 D.P.R. 49, 53. A los fines de la moción para desestimar hay que aceptar como cierto cuanto se alega en la demanda. *Boulon* v. *Pérez,* 70 D.P.R. 988; *Sierra, Sec. Trabajo* v. *Bird,* 78 D.P.R. 170, 174; *Sacarello* v. *Junta de Retiro,* 75 D.P.R. 267, 274; *Walker* v. *Tribl. Contribuciones y Tesorero,* 72 D.P.R. 698, 705; *González* v. *Hawayek,* 71 D.P.R. 528, 529. En ésta se sostiene de manera paladina que él—Julio Izquierdo Serrano—era esposo de la adjudicataria Josefa Godínez; que estando las descritas fincas en poder de ambos, ellos cobraban las rentas producidas y se las apropiaban para sí y concibieron el plan de adjudicarse los referidos bienes y de privar a los herederos legales del Dr. Izquierdo Serrano de dichas propiedades; que a pesar de recibir los ingresos necesarios para atender al pago de las contribuciones territoriales dejaron de pagar las mismas, con el fin calculado de causar, como efectivamente causaron, que las propiedades fuesen vendidas en pública subasta y adjudicadas a Josefa Godínez, y que todas y cada una de las mencionadas subastas fueron obtenidas fraudulentamente, ya que en ninguna de ellas se notificó a los herederos del Dr. Izquierdo Serrano. En la demanda se alega, por tanto, de manera taxativa que Julio Izquierdo Serrano tenía conocimiento de los vicios que invalidan su título sobre las fincas A, B y F. Véanse *Olmedo* v. *Rivera,* supra; *Ninlliat* v. *Suriñac,* 24 D.P.R. 67, 76; *Carlo* v. *Ferrer,* 27 D.P.R. 216, 239; *Falcón* v. *Sucn. Ignacio,* 33 D.P.R. 974, 977. En lo que a él concierne, la demanda aduce

una buena causa de acción. Fué por tanto un error del tribunal a quo dictar sentencia desestimando la demanda en cuanto a Julio Izquierdo Serrano. (³)

*La sentencia apelada será confirmada en lo que respecta a The Lutheran Church y Manuel Godínez Caloca, revocada en cuanto a Julio Izquierdo Serrano y devuelto el caso al tribunal de origen para que en relación con dicho demandado el pleito continúe sus trámites.*

Los Jueces Asociados Sres. Negrón Fernández y Sifre están conformes con el resultado.

---

Opinión disidente del Juez Asociado Sr. Belaval.

En cuanto a un extremo de la controversia planteada en este caso, la convalidación por inscripción del derecho de la Iglesia Luterana, que se resuelve aplicando el caso de *Pérez* v. *Cancel*, 76 D.P.R. 667 (Marrero), (1954), cita precisa a las págs. 676 y 677, no estoy conforme. Cuando se resolvió el caso de *Pérez* v. *Cancel*, supra, disentí en cuanto al pronunciamiento que contiene dicho caso, que declarada la nulidad de un derecho, los posteriores adquirentes de acuerdo con el Registro de la Propiedad, no tienen que sufrir los efectos de la nulidad. Haciendo uso de la clásica frase de don León Galindo y de Vera diremos: "la inscripción no es agua del Jordán que borra toda mancha, ni el Registrador que no oye a la parte contraria, que juzga por su criterio, sin discusión, sin noticias muchas veces, ha de sustituir a los Tribunales, fallando de un modo irrevocable sobre los intereses permanentes de la sociedad": 2 Galindo Vera y Escosura 487, (ed. del Establecimiento Tipográfico de Felipo Pinto y Oravio de 1896). Como es la segunda vez que me veo obligado a disentir, en esta cuestión, quiero formular por escrito mi objeción a tal razonamiento, temeroso de que vaya a considerarse esta

---

(³) En su resolución de 10 de septiembre de 1954 el tribunal sentenciador manifestó que la demanda "no aduce causa de acción contra ninguno de los demandados." No estuvo justificado dicho tribunal en llegar a semejante conclusión en relación con aquellos demandados que no se habían personado en autos en forma alguna.

segunda disención, como un caprichoso o extravagante uso de la autonomía que gozan los Jueces de este Tribunal, para formular, por separado, sus objeciones a la norma establecida por la opinión de la mayoría.

El error que hemos cometido en el pasado es haber aplicado la jurisprudencia española correspondiente a la Ley Hipotecaria española después de sus variadas reformas a la Ley Hipotecaria puertorriqueña, que en esta cuestión, permanece idéntica a la Ley Hipotecaria española de 1861, que en cuanto a este extremo fué la que se extendió a las Provincias de Ultramar. Veamos, en primer término, la tabla de las analogías y disimilitudes:

| *Ley española de 1861* | *Ley puertorriqueña de 1893* |
|---|---|
| Art. 33.—La inscripción no convalida los actos o contratos inscritos que sean nulos con arreglo a las leyes. | La inscripción no convalida los actos o contratos inscritos que sean nulos con arreglo a las leyes. |
| Art. 34.—No obstante lo declarado en el artículo anterior, los actos o contratos que se ejecuten u otorguen por persona, que en el registro aparezca con derecho para ello, no se invalidarán en cuanto a tercero, una vez inscritos aunque después se anule o resuelva el derecho del otorgante en virtud de título anterior no inscrito, o de causas que no resulten claramente del mismo registro. | No obstante lo declarado en el artículo anterior, los actos o contratos que se ejecuten u otorguen por persona que en el registro aparezca con derecho para ello, no se invalidarán en cuanto a tercero, una vez inscritos, aunque después se anule o resuelva el derecho del otorgante en virtud de título anterior no inscrito o de causas que no resulten claramente del mismo registro. |
| Solamente en virtud de un título inscrito podrá invalidarse en perjuicio de tercero, otro título posterior también inscrito. | Solamente en virtud de un título inscrito podrá invalidarse, en perjuicio de tercero, otro título posterior también inscrito, salvo lo dispuesto en el artículo 389. |
| Lo dispuesto en este artículo no producirá efecto hasta un año después que empiece a regir la presente ley y no será aplicable en ningún tiempo al título inscrito con arreglo a lo prevenido en el art. 397 a menos que la prescripción haya convalidado y asegurado el derecho a que se refiere dicho título. | Lo dispuesto en este artículo no será aplicable en ningun tiempo al título inscrito con arreglo a lo prevenido en el artículo 390, a menos que la prescripción haya convalidado y asegurado el derecho a que se refiere dicho título. |

(Vide: I Gómez de la Serna—"La Ley Hipotecaria", páginas 619–621 (ed. de la Imprenta de la Revista de Legislación a cargo de Julián Morales de 1862); Legislación Hipotecaria para Cuba, Puerto Rico y Filipinas", (segunda ed. del Centro Editorial de Góngora de 1912).

*Ley española de 1869*

Art. 34.—No obstante lo declarado en el artículo anterior, los actos o contratos que se ejecuten u otorguen por persona que en el Registro aparezca con derecho para ello, una vez inscritos, no se invalidarán en cuanto a tercero, aunque después se anule o resuelva el derecho del otorgante en virtud de título anterior no inscrito o de causas que no resulten claramente del mismo Registro, *o si la inscripción se hubiere notificado o hecho saber a las personas que en los veinte años anteriores hayan poseído, según el Registro, los mismos bienes y no hubieren reclamado contra ella en el término de treinta días.*

*La notificación a que se refiere el párrafo anterior se verificará a solicitud del que, según el Registro, sea dueño del inmueble o del derecho real, por el mismo registrador, verbalmente o por escrito, a los anteriores adquirentes que tuviesen registrado su derecho y residan en el territorio del Registro, y por edictos a los que se hallen ausentes o no sean conocidos, y a los herederos de los que hayan fallecido.*

*Los requeridos de cualquiera de estos modos que en el término de treinta días no presenten en el Juzgado o Tribunal correspondiente demanda que pueda invalidar la inscripción notificada, no podrán hacer valer su derecho, si alguno tuviesen contra el tercero que inscriba después el suyo en la forma debida sobre la misma finca, aunque la ins-*

*Ley puertorriqueña del 1893*

Idéntica a la anterior detallada bajo esta misma columna.

*cripción anterior proceda de un título falso o nulo.*

*La notificación personal se verificará dejando en poder del requerido un breve extracto de la parte de la inscripción que pueda interesarle, recogiendo recibo de ella, o si esto no fuere posible extendiendo el mismo registrador una diligencia de entrega. Si el requerido contestase verbalmente que no tiene reclamación que hacer o dejare transcurrir el término de los treinta días sin traer al Registro documento que acredite la presentación de su demanda, el registrador lo hará constar también por diligencia. Cuando el requerido contestase por escrito será éste firmado de su puño, y el registrador lo conservará en su archivo.*

*Los edictos en su caso, se publicarán y fijarán por el registrador en los parajes acostumbrados del lugar en que radique la finca y del pueblo del Registro, y en el Boletín oficial de la provincia.*

*Si en los treinta días señalados no se entablare demanda que pueda dejar sin efecto la inscripción, el registrador, ocho días después, pondrá en ésta una nota marginal expresando aquel resultado. En cualquiera otro caso no se extenderá dicha nota hasta que sea vencido en juicio el anterior adquirente que hubiera reclamado contra la inscripción.*

*Lo dispuesto en este artículo no será aplicable a la inscripción de la mera posesión a menos que la prescripción haya convalidado y asegurado el derecho inscrito.*

(Vide: 5 Alcubilla "Diccionario de Administración" 658, ed. de López Camacho del 1877).

*Ley española de 1877*                    *Ley puertorriqueña de 1893*

Art. 34.—No obstante lo declarado en el artículo anterior los actos que se ejecuten o contratos que se otorguen por persona que en el Registro aparezca con derecho para ello, una vez inscritos, no se invalidarán en *cuanto a los que con ella hubiesen contratado por título oneroso*, aunque después se anule o resuelva el derecho del otorgante en virtud de título anterior no inscrito o de causas que no resulten claramente del Registro. *Tampoco se invalidarán dichos actos o contratos con respecto a las citadas personas, aun cuando después se anule o resuelva el derecho del otorgante en virtud de título anteriormente inscrito, si la inscripción hecha a favor de aquél se hubiere notificado a los que en los veinte años precedentes hayan poseído, según el Registro, los mismos bienes y no hubieren reclamado contra ella en el término de treinta días.*

La notificación a que se refiere el párrafo anterior, se verificará a solicitud del que, según el Registro, sea dueño del inmueble o del derecho real, por el mismo Registrador, verbalmente o por escrito, a los anteriores adquirentes que tuviesen registrado su derecho y residan en el territorio del Registro, y por edictos a los que se hallen ausentes o no sean conocidos y a los herederos de los que hayan fallecido.

Los requeridos de cualquiera de estos modos, que en el término de treinta días no presenten en el Juzgado o Tribunal correspondiente, demanda que pueda invalidar la inscripción notificada, no podrán hacer valer su derecho, si alguno tuviesen, contra el tercero que inscriba después el suyo en la forma debida sobre la misma finca, aunque la inscripción anterior proceda de un título falso o nulo.

Idéntica a la anterior detallada bajo esta misma columna.

(Vide: II Galindo y Escosura: "Comentarios a la Legislación Hipotecaria de España", 358–360, Cuarta edición reimpresa en el 1903).

*Ley española de 1909*          *Ley puertorriqueña de 1893*

Art. 34.—No obstante lo declarado en el artículo anterior, los actos que se ejecuten o contratos que se otorguen por persona que en el Registro aparezca con derecho para ello, una vez inscritos, *no se invalidarán en cuanto a los que con ella hubiesen contratado por título oneroso, aunque después se anule o resuelva el derecho del otorgante en virtud de título anterior no inscrito o de causas que no resulten claramente del mismo registro.*

Tampoco se invalidarán dichos actos o contratos con respecto a las citadas personas, aun cuando después se anule o resuelva el derecho del otorgante en virtud de título anteriormente inscrito, si la inscripción hecha a favor de aquél se hubiere notificado a los que en los veinte años precedentes hayan poseído, según el Registro, los mismos bienes, y no hubieren reclamado contra ella en el término de treinta días.

Idéntica a la anterior detallada bajo esta misma columna.

La notificación a que se refiere el párrafo anterior, se verificará a solicitud del que, según el Registro, sea dueño del inmueble o del derecho real, por el mismo Registrador verbalmente o por escrito, a los anteriores adquirentes que tuviesen registrado su derecho y residan en el territorio del Registro, y por edictos a los que se hallen ausentes o no sean conocidos y a los herederos de los que hayan fallecido.

Los requeridos de cualquiera de estos modos, que en el término de treinta días no presenten en el Juzgado o Tribunal correspondiente, demanda que pueda invalidar la ins-

cripción notificada, no podrán hacer valer su derecho, si alguno tuviesen, contra el tercero que inscriba después el suyo en la forma debida sobre la misma finca, aunque la inscripción anterior proceda de un título falso o nulo.

La notificación personal se verificará dejando en poder del requerido un breve extracto de la parte de la inscripción que pueda interesarle, recogiendo recibo de ella, o si esto no fuera posible, extendiendo el mismo Registrador una diligencia de entrega. Si el requerido contestase verbalmente que no tiene reclamación que hacer o dejare transcurrir el término de los treinta días sin traer al Registro documento que acredite la presentación de su demanda, el Registrador lo hará constar también por diligencia. Cuando el requerido contestase por escrito, será éste firmado de su puño y el Registrador lo conservará en su archivo.

Los edictos, en su caso se publicarán y fijarán por el Registrador en los parajes acostumbrados del lugar en que radique la finca, y del pueblo del Registro y en el Boletín Oficial de la provincia.

Si en los treinta días señalados no se entablare demanda que pueda dejar sin efecto la inscripción, el Registrador, ocho días después, pondrá en ésta una nota marginal, expresando aquel resultado. En cualquiera otro caso no se extenderá dicha nota hasta que sea vencido en juicio el anterior adquirente que hubiere reclamado contra la inscripción.

Lo dispuesto en este artículo no será aplicable a la inscripción de la mera posesión, a menos que la prescripción haya convalidado y asegurado el derecho inscrito.

*Ley española de 1909*

*Ley puertorriqueña de 1893*

Transcurrido el plazo de quince años, desde su fecha, las inscripciones de bienes comprados al Estado, sean anteriores o posteriores a esta ley, no podrán ser anuladas por exceso de cabida ni por otras causas que no consten en el Registro.

(Vide: 2 Morell—"Legislación Hipotecaria" 668–670 (segunda ed. corregida y adicionada de la Editorial Reus, S. A.. de 1927).

*Ley española de 1944–45*

*Ley puertorriqueña del 1893*

Art. 34.—El tercero que de buena fe adquiera algún derecho de persona que en el Registro aparezca con facultades para transmitirlo será mantenido en su adquisición una vez que haya inscrito su derecho, aunque después se anule o resuelva el del otorgante por virtud de causas que no consten en el mismo Registro.

La buena fe del tercero se presume siempre mientras no se pruebe que conocía la inexactitud del Registro.

Idéntica a la anterior detallada bajo esta misma columna.

(Vide: Medina y Marañón—"Leyes Civiles de España"— 37–41 páginas correspondientes al texto hipotecario—ed. del Instituto Editorial Reus de 1949).

Examinadas las reformas que sufre el art. 34 de la Ley Hipotecaria española, vemos cómo el principio original de 1861: "lo inscrito no se invalida por lo que no está inscrito" —Gómez de la Serna, obra y ed. citadas pág. 622—se va transformando legislativamente a favor de una fe registral absoluta, pero rodeada de una serie de exigencias que son un verdadero sistema de garantías para todos los intereses envueltos. Para convalidar lo posteriormente inscrito ante lo anteriormente inscrito, la reforma del 1869 exige el trámite de notificación a todas las personas que en los veinte años anteriores hubiesen poseído, según el propio Registro. La reforma de 1877 substituye el concepto de "tercero" por el

de "adquirente a título oneroso" y limita los efectos de la inscripción y notificación en cuanto a adquirentes a título gratuito, donatarios, herederos, etc. La reforma de 1909 sólo se refiere a las inscripciones de bienes comprados al Estado, las cuales no podrían ser anuladas por exceso de cabida, ni por otras causas; después de transcurrido el plazo de quince años. La reforma del 1944–45 vuelve a restituir el concepto de tercero, pero que resulte tercero de buena fe, conserva la limitación en cuanto a los adquirentes a título gratuito, desecha la convalidación de lo inscrito por el procedimiento de notificación y declara que será mantenida la adquisición contra causas de nulidad que no consten en el mismo registro. Lamentamos no tener tiempo para desarrollar en toda su extensión los conceptos de "inexactitud registral" y de "tercero de buena fe" comprendidos en la última reforma española.

En cuanto a las acciones de nulidad, que es lo que hoy nos ocupa, es claro, que de acuerdo con la Ley española de 1861, podía anularse en perjuicio de tercero una inscripción posterior, siempre (1) que el título en que se basaba la acción de nulidad hubiera sido objeto de una inscripción anterior, o (2) que la causa de nulidad apareciera claramente del Registro. Como bien apunta, Roca Sastre—obra y ed. citada a la página 436—, las dos cosas venían a ser lo mismo, "sin más variación que la de agregar al concepto de *títulos* no inscritos, el de *causas* de nulidad (o resolución). Por tanto, el art. 34 en la Ley Hipotecaria de 1861 quedaba reducido a ser una aplicación de la regla básica *lo no inscrito no perjudica a tercero*, por bien que entendida ésta rígidamente (5)–(5) o sea que bastaba una inscripción de un título válido para que la nulidad de un título posteriormente inscrito pudiera afectar a un tercero adquirente, *a pesar que en el Registro no se expresara claramente tal nulidad.*"

Examinado nuestro art. 34, a la luz de sus verdaderos precedentes históricos, y su actual alcance legislativo, como es

.siempre nuestro deber hacerlo, es evidente que la única protección que ofrece el art. 34 nuestro al adquirente posterior es la contenida en el clásico apotegma de Gómez de la Serna: "lo inscrito no se invalida por lo que no está inscrito":— Gómez de la Serna, obra y ed. citadas pág. 622—. Este elemento de forzosidad registral se acentúa si recordamos que lo que perseguía la Ley Hipotecaria puertorriqueña de 1893 era obligar a la inscripción de los títulos para darle mayor garantía al crédito territorial.

Basado en este principio—lo no inscrito no perjudica y lo inscrito anteriormente perjudica a lo inscrito posteriormente, la Legislatura de Puerto Rico no ha creído prudente, como lo creyó la reforma española de 1869, adoptar el procedimiento de convalidación del título nulo mediante notificación, ni hacer una distinción, en cuanto a nulidad entre los adquirentes a título oneroso y los adquirentes a título gratuito, como lo hizo la reforma española de 1877, ni declarar la convalidación del título nulo inscrito ante el título anterior inscrito con respecto a tercero como lo hizo la reforma española de 1944–45, ni adoptar la indemnización por el Estado al anterior dueño perjudicado sugerida para la última reforma española. Por el contrario, la Legislatura de Puerto Rico ha creído prudente mantener el balance entre la esfera civil de la nulidad y la esfera registral de la nulidad, ha liberalizado la inscripción con defectos subsanables que, hasta cierto extremo, es una autorización de la inexactitud registral.

De manera, pues, que el estado actual de la Ley puertorriqueña es el mismo que prevalecía en España en 1861, que como dice Roca Sastre a la pág. 439 y 430 de su obra antes citada, "que en la Ley Hipotecaria de 1861 el tercero que adquiriese un derecho de quien figurase como su titular registral en virtud de un título traslativo nulo, aunque este tercero adquiriese de buena fe y a título oneroso e inscribiese su adquisición, perdía ésta a consecuencia del ejercicio triunfante de una acción de nulidad apoyada en un título anterior-

mente inscrito, *por más que esta posibilidad invalidatoria no se manifestase o revelare de ningún modo en el Registro.*" Para que se entienda mejor el alcance de la glosa, copiaremos de unas páginas anteriores de la misma obra el siguiente análisis de la legislación hipotecaria de 1861: "Puestos los legisladores de 1861 en el terreno más positivo de que los títulos inscritos surtían efectos contra *o en cuanto a terceros*, estimaron necesario precisar que estos efectos no se producían si el título inscrito era nulo, y por ello incluyeron en la ley Hipotecaria el art. 33 cuyo contenido era casi idéntico al del artículo 33 de la ley actual. El artículo 34 de la Ley Hipotecaria de 1861, daba la impresión de constituir una excepción al referido artículo 33, pues al comenzar con las palabras 'no obstante lo declarado en el artículo anterior' parecía querer proteger a todo trance al tercero que adquiriese de quien aparecía como titular registral, aunque éste lo fuese en virtud de un título traslativo nulo; pero en rigor no era así, al menos normalmente, o sea cuando existían inscripciones de títulos traslativos practicadas con anterioridad a la inscripción de dicho título nulo, de suerte que si el titular registral, según la inscripción anterior a ésta, reclamaba judicialmente con éxito que se declarase la nulidad de dicho título y de la correspondiente inscripción, esta nulidad *arrastraba* también a la adquisición del tercero, por más que hubiere contratado a título oneroso y con buena fe, ya que así lo disponía el párrafo segundo del propio artículo 34 .... Este precepto únicamente protegía al tercer adquirente cuando el derecho de su transferente fuese anulado en virtud de *título anterior no inscrito o de causas que no resultaban claramente del mismo Registro*, pero esta protección en definitiva venía a ser la misma que se conseguía con aplicar el artículo 32 (entonces artículo 23) sin más variación que la de agregar al concepto de *títulos* no inscritos, el de *causas* de nulidad (o resolución). Por tanto, el artículo 34 en la Ley Hipotecaria de 1861 quedaba reducido a ser una aplicación de la regla básica *lo no*

*inscrito no perjudica a tercero,* por bien que entendida ésta rígidamente."

Que ésta era la interpretación fundada y dominante del art. 34 de la Ley Hipotecaria de 1861, según Roca Sastre, "lo demuestra la circunstancia de que la reforma hipotecaria de 1869 no modificó este precepto en el sentido de aclararlo, sino que lo alteró profundamente al introducir la importante y original medida de la notificación" (escolio 2 y pág. 436).

Recogiendo la glosa de Gómez de la Serna referente a la Ley del 1861, continúa Roca Sastre—escolio 4 y 5 pág. 436 y 437—: "El párrafo segundo del artículo 34, al decir que sólo en virtud de un título inscrito podrá invalidarse en perjuicio de tercero otro título posterior también inscrito, implícitamente reconoce que el título anterior inscrito no se invalida por el posterior inscrito que no sea legítimo para este efecto. Respecto a los que tienen su derecho inscrito, el Derecho común es el que fija el valor respectivo de sus títulos. El que viendo en el Registro títulos anteriores no examina la legitimidad de las adquisiciones que entre ellos y el suyo pueda haber, impúteselo a sí mismo; la ley protege contra lo que no puede conocer, no contra lo que por negligencia deja de averiguar cuando tiene medios de conseguirlo. Todo es parte del mismo pensamiento, que puede formularse en los siguientes términos: *lo que no está en el Registro no puede perjudicar a tercero* ... O sea que bastaba una inscripción de un título válido para que la nulidad de un título posteriormente inscrito pudiera afectar a un tercer adquirente, *a pesar que en el Registro no se expresara claramente tal nulidad.* Es decir, los legisladores de 1861 tenían aquí una idea excesivamente restringida de la publicidad registral, pues si ésta impone que nada de lo que no *aparezca* en el Registro no puede perjudicar al tercer adquirente de buena fé y a título oneroso, es evidente que en caso de un título nulo inscrito el elemento publicable o noticiable a terceros no es el elemento *título,* sino la circunstancia *nulidad.*"

No hay duda de que en este caso, había un título anterior inscrito a nombre del doctor Eladio Izquierdo Serrano. En la demanda de este caso se alega, que las subastas para el pago de contribuciones son nulas de toda nulidad "porque en la tramitación de los correspondientes expedientes de apremio dejó de observarse por el señor Tesorero de Puerto Rico las disposiciones del Código Político de Puerto Rico en los artículos 315, 348, 349, 350, 351 y 352, ya que en ninguna de las subastas celebradas se hizo notificación a los herederos de Eladio Izquierdo Serrano quienes al momento de la subasta lo eran José A. Izquierdo Rivera y Alfredo Izquierdo Negrón, y habiendo cedido este último su participación a Manuela Quintero Izquierdo y Manuel Godínez Caloca, tampoco se notificó a éstos del expediente de apremio, ni de la venta en pública subasta realizada para darles la oportunidad de redimir los bienes, todo ello con el conocimiento que tenía el señor Tesorero de Puerto Rico de quiénes eran los herederos y cesionarios de Eladio Izquierdo Serrano al momento de iniciarse el expediente de apremio que condujo a la subasta de las propiedades y la adjudicación de todas y cada una de ellas a Josefa Godínez", páginas 10 y 11 de la demanda de los autos). No hay duda de que esta falta de notificación, una vez establecida, anula las adjudicaciones en remate, según nuestra propia jurisprudencia. No hay duda que se trata de una causa de nulidad que consta del mismo Registro, pues las adjudicaciones por apremio contributivo son objeto de una inscripción extensa, donde se detalla todo el procedimiento.

Siendo esto así, la anulación de dichas adjudicaciones de remate produce la nulidad de todos los traspasos sucesivos: *González* v. *Sucn. Díaz*, 69 D.P.R. 643, (Todd, hijo), (1949); *González* v. *Pirazzi*, 23 D.P.R. 399 (Wolf) (1916).

A mi juicio, el caso de *Pérez* v. *Cancel*, 76 D.P.R. 677 (Marrero) (1954), cita precisa a la pág. 676, no refleja el estado actual de nuestra legislación y tiene que ser revisado, pues parte de principios legislativos foráneos y no de una

nueva interpretación del aspecto puramente teórico de la cuestión litigiosa. Siendo esto así, me siento obligado a disentir en cuanto a este caso, pues la declaración de tercero de la Iglesia Luterana se hace aplicando los principios del caso de *Pérez* v. *Cancel.*