ARTURO IZQUIERDO, demandante y recurrente, *v.* JULIO IZ-QUIERDO SERRANO, JOSEFA GODÍNEZ, ETC., ET AL., demandados y recurridos.

Número 11494.

*Sometido:* 8 de julio de 1957. *Resuelto:* 26 de mayo de 1959.

*Juan Nevárez Santiago,* abogado del recurrente; *José C. Jusino,* abogado del recurrido Sr. Izquierdo; *Diego Guerrero Noble y Carlos D. Vázquez,* abogados del recurrido Sr. Godínez; *Artemio P. Rodríguez y Baldomero Roig Vélez,* abogados de la recurrida The West Indies Missions Board of the United Lutheran Church in America.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 26 de mayo de 1959

A la anterior moción de reconsideración, no ha lugar.

Lo acordó el Tribunal y firma el señor Juez Presidente Interino. El Juez Asociado señor Belaval disintió por escrito. El Juez Presidente señor Negrón Fernández no intervino.

## EN RECONSIDERACIÓN

Opinión disidente del Juez Asociado Sr. Belaval.

Muy poco tenemos que añadir a nuestra opinión disidente original—*Izquierdo* v. *Izquierdo,* 80 D.P.R. 71 (Marrero), (1957), cita precisa a las págs. 80–93.

Los hechos alegados, en su forma más simple, son los siguientes: El doctor Eladio Izquierdo Serrano falleció sin haber otorgado testamento el 10 de octubre de 1932, sucediéndole como sus únicos y universales herederos sus hijos Alfredo Izquierdo Negrón y José A. Izquierdo Rivera. A su fallecimiento, el doctor Izquierdo dejó seis fincas que adquirieron por título de herencia sus dos mencionados hijos.

No se pagaron las contribuciones territoriales sobre las mismas, y sin notificar a los herederos, dueños de dichas propiedades, el Tesorero de Puerto Rico, procedió a venderlas en pública subasta (págs. 72–73 y 74–75). Los demandados son los adquirentes o subadquirentes de las propiedades vendidas por el Tesorero de Puerto Rico, para el cobro de las contribuciones.

Lo que tenemos que determinar es, si habiendo constancia en el Registro, tanto del procedimiento de apremio como de la adjudicación en la subasta del mismo, cualquier subadquirente resulta un tercero.

La protección registral exige cuatro requisitos fundamentales: (1) haber adquirido de persona, que según el Registro aparezca con derecho para transmitir la propiedad; (2) que se haya procedido a inscribir el derecho así transmitido; (3) que el título anterior capaz de producir la nulidad de la inscripción posterior no conste en el Registro; (4) que la causa de nulidad no resulte claramente del mismo Registro, (Artículo 34 de la Ley Hipotecaria de Puerto Rico).

El primer supuesto es el que consagra el principio del tracto sucesivo. Se interrumpe éste cuando se adquiere de persona distinta a la que aparece como titular registral; el segundo supuesto es el que consagra el principio de la diligencia, no sólo cuando se trata de un título suficiente en sí mismo (artículo 34), sino también cuando se trata de un derecho potencial, (artículo 69).

El tercer supuesto es el que consagra el principio de la fe pública registral. Como bien dice Roca Sastre: "La protección del principio de la fe pública actúa independientemente de la circunstancia de que el tercer adquirente hubiera o no consultado los asientos del Registro y de que conozca efectivamente su contenido, produciéndose todo como si tal consulta y consiguiente conocimiento, hubiera tenido lugar. La Ley presupone que el tercer adquirente conocía los términos del Registro y que contrató en vista de ellos". I Roca

Sastre—Derecho Hipotecario 434 (quinta edición de la Casa Editorial Bosch de 1954). En cuanto al análisis del apotegma hipotecario: "lo no inscrito no perjudica a tercero", véase mi anterior opinión disidente en este mismo caso.

El cuarto supuesto está inspirado en el principio de la publicidad. Si la causa de nulidad consta claramente del Registro, el adquirente y el subadquirente no pueden alegar desconocimiento de la misma. Oigamos a Roca Sastre: "... el verdadero problema relativo a la *explícita* constancia registral de las causas de nulidad o resolución (o rescisión), lo plantean aquéllas que no siendo de las que tienen un asiento específico, sino que estando embebidas en el asiento referente al acto o derecho registrado, no consisten tampoco en una *condición* propiamente dicha o en una *reserva o advertencia* expresamente consignada en el Registro. Aquí se pone a prueba el ámbito de la publicidad registral en plena conexión con el principio de la fe pública.

"En estos casos ¿cuándo podrá afirmarse que una causa de nulidad o resolución (o de rescisión) consta o no *explícitamente* registrada?

"La solución dependerá de las circunstancias de cada caso, lo cual en definitiva quedará a la apreciación de los Tribunales. Pero como regla o criterio interpretativo, hay que tener presente que nuestro sistema se sitúa en este punto en un *término medio*: ni meros indicios o conjeturas, ni pleno detalle o especificación de las posibilidades de nulidad, o resolución u otras análogas..."

"Por otra parte, no se requiere *concreción* acerca de la posibilidad de la nulidad o resolución (o revocación, etc.), pues constando registrada de una manera explícita la *causa* las consecuencias que la misma pueda traer consigo son de cuenta del tercer adquirente, ya que ha de saberlas en virtud del principio de que la ignorancia del Derecho a nadie aprovecha; no precisa que conste la causa en el sentido que se exprese que, según la ley, puede producir tales o cuales

efectos destructores, *bastando que consten dichas causas* sin tenerse que usar de los conceptos de nulidad o resolución (o rescisión) (Calderón Neira, Gayoso, Morell, etc.)." Roca Sastre, obra citada páginas 456–457. (Énfasis provisto.)

1. En cuanto al primer supuesto de tracto sucesivo, nos hemos negado en el pasado a reconocer que un marshal (alguacil), actuando como tal en una venta en pública subasta, sea la "persona que en el Registro aparezca con derecho" para transmitir una propiedad—*Sucn. Trías* v. *Porto Rico Leaf*, 50 D.P.R. 91, (Hutchison), (1936), cita precisa a la pág. 96 (venta judicial realizada dentro de un procedimiento ejecutivo hipotecario). No veo cómo podríamos hacer una distinción cuando se trate de la venta realizada por un Colector de Rentas Internas en un procedimiento de apremio para el cobro de contribuciones. En este caso de interrupción del tracto sucesivo, el Registro no garantiza el derecho de tercero, pues el adquirente o subadquirente, compra "a sabiendas de que la validez de su título depende de la del procedimiento mencionado"—*Ayala* v. *Flores*, 50 D.P.R. 873, (Travieso), (1937), cita precisa a la pág. 880.

2. En cuanto al tercer supuesto de la fe pública registral, no hay duda que esta acción se basa en un título anterior inscrito, el del doctor Eladio Izquierdo Serrano, título que se supone transmitido en virtud de la venta hecha por el Colector de Rentas Internas, para el cobro de las contribuciones territoriales. No estamos, pues, ante una declaración judicial o administrativa independiente del título anterior inscrito, sino ante el mismo título en que se escuda el actual poseedor. En esta situación todo depende de que la causa de nulidad conste del Registro.

3. En cuanto al cuarto supuesto, inspirado en el principio de la publicidad, nuestra jurisprudencia tiene firmemente establecido, que el hecho de constar en el Registro, el procedimiento seguido contra el reclamante, y el resultado de dicho procedimiento, constituye suficiente noticia registral.

En el caso de *Anaud* v. *Martínez*, 40 D.P.R. 669, (Hutchison), (1930), cita precisa a la pág. 677 (nulidad de un procedimiento ejecutivo hipotecario), este Tribunal resolvió: "Que la finca fue adjudicada a Martínez como único postor y comprador, que él fue el acreedor hipotecario en un procedimiento ejecutivo sumario, y que la finca había sido vendida por Martínez a Yenderrozo, quien vendió al Cabo Rodríguez, son *hechos que aparecían claramente del Registro*. Rodríguez, por tanto, tenía conocimiento de que el título de Martínez, y en su consecuencia, su propio título, dependían de la validez del procedimiento ejecutivo. Él sabía que si el procedimiento ejecutivo era nulo, Martínez nada tenía que traspasar a Yenderrozo y que Yenderrozo no podía vender lo que no poseía". (Énfasis provisto.)

En el caso de *Comunidad Religiosa, etc.,* v. *Fernández*, 61 D.P.R. 133, (Snyder), (1942), cita precisa a la pág. 142 (cancelación indebida de un censo en una propiedad posteriormente adquirida como libre de la carga), este Tribunal resolvió citando el caso de *Ochoa* v. *Hernández*, 230 U. S. 139, 57 L. ed. 1427, (Pitney), (1913), cita precisa a la pág. 164 U. S., 1439 L. ed., lo siguiente:

"Es una doctrina familiar, reconocida universalmente donde están vigentes leyes para el registro o la inscripción de escrituras de traspaso, que todo comprador adquiere su título sujeto a cualquier defecto o vicio que pueda descubrirse al hacerse referencia a su cadena de títulos según constan en los registros públicos. (Citas.)

"Este principio está reconocido en los artículos 34 y 37 de la Ley Hipotecaria. Al referirse a 'causas que no resulten claramente del mismo Registro' y a 'causas que consten expresamente en el registro', se refieren, desde luego, a *cuestiones de hecho* y no a cuestiones de derecho. En otras palabras, si el registro anuncia *cierto estado de hechos* que hace que el título sea nulo, o sujeto a ser atacado en derecho, el comprador que descansa en la inscripción recibe su título sujeto a cualesquiera consecuencias que puedan surgir ante la ley de los *hechos* así anunciados". (Énfasis provisto.)

En el caso de *Cruz* v. *Sucn. González*, 72 D.P.R. 308, (De Jesús), (1951), cita precisa a las págs. 317 y 318 (error de un Registrador al calificar de firme e inapelable una sentencia que no lo era), este Tribunal resolvió: "El error del registrador al calificar de firme e inapelable la sentencia no altera la situación registral de dichas fincas, pues son los *hechos* que surjan del registro y no las conclusiones del registrador los determinantes de la validez de los títulos inscritos... Es claro que si la certificación fuere admitida, resultaría entonces que los demandados no son terceros." (Énfasis provisto.)

En el caso de *Rivera* v. *Meléndez*, 72 D.P.R. 432, (Marrero), (1951), cita precisa a la pág. 439 (una orden de ejecución librada para ser diligenciada por el marshal de la Corte Municipal de San Juan y por éste endosada al Marshal de la Corte Municipal de Fajardo), este Tribunal resolvió: "Al actuar el marshal de esta última Corte a virtud del endoso héchole por el Marshal de la Corte Municipal de San Juan, su actuación resultó enteramente nula e inexistente. (Citas).

"Del Registro de la Propiedad, como se ha visto aparecía claramente la causa de la nulidad e inexistencia de la venta efectuada por el Marshal de la Corte Municipal de Fajardo a favor de Faustino R. Fuertes. Siendo ello así, Ramón Meléndez Tabales y la sociedad Meléndez y Meléndez no eran terceros ...puesto que si bien no intervinieron en el acto o contrato que dio lugar a la inscripción de la finca a favor de Fuertes, sin embargo, aparecía claramente del registro el vicio de que adolecía su título y, por ende, ellos tenían conocimiento del mismo."

Como se ve, la única diferencia que existe entre la glosa de Roca Sastre y el contenido de nuestra jurisprudencia es que la primera habla de *causas* y la segunda de *hechos*. Pero el principio es el mismo: Si del Registro consta la causa de la nulidad, o los hechos suficientes para producir tal nulidad,

el subadquirente no es un tercero, puesto que ha adquirido de acuerdo con las constancias del Registro.

Por las razones expuestas me veo obligado a disentir de la resolución que declara sin lugar la moción de reconsideración en este caso.